1

2

3

4

5

6

7

8

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| RICHARD L. POPE, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TROY X. KELLEY, DIANE D. KELLEY, and the marital community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE INTERNATIONAL, INC.,<br><br>Defendants. | Case No.<br><br>[King County Superior Court Case No.:  15-2-21926-0 SEA]<br><br>NOTICE OF REMOVAL |

19

20

21

22

23

Defendants, Troy Kelley, Diane Kelley, Blackstone International, Inc., and United

National, LLC[1]  hereby removes this action from the Superior Court of Washington, King

County, to the United States District Court for the Western District of Washington.  Removal

is based on federal question jurisdiction because a federal question appears on the face of the

24

25

---

[1] United National terminated in August 2008.  Nonetheless, for the purposes of this Notice, Defendants acknowledge that they are bound by Plaintiff's allegation that United National is ongoing.

NOTICE OF REMOVAL - 1

1    initial pleading filed by Plaintiff Richard L. Pope, Jr.  In support of its notice, Defendants state

2    as follows:

3          1.      On September 8, 2015, Plaintiff filed his Complaint against Defendants in the

4    Superior Court of Washington, King County.  Case No. 15-2-21926-0.

5          2.      On December 6, 2015, Plaintiff served all Defendants with the Complaint and

6    Summons.  In accordance with 28 U.S.C. § 1446(a) and Local Civil Rule 101, a copy of the

7    Complaint is attached hereto as Exhibit A.  Copies of all other process, pleadings and orders

8    received by Defendants are attached as Exhibit B.

9          3.      Defendants file this Notice of Removal within thirty days of the date they were

10   served with the Complaint and Summons.  Removal is therefore timely under 28 U.S.C.

11   § 1446(b).

12   **I.     This Court Has Federal Question Jurisdiction**

13         4.      A United States District Court has "original jurisdiction of all civil actions

14   arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

15         5.      Plaintiff alleges that he refinanced a home more than ten years ago.  Compl. ¶9.

16   He alleges that United National, doing business as Post Closing Department, handled the

17   reconveyance tracking for a fee that was disclosed to Plaintiff at the time of closing.

18   Compl. ¶ 10.  Plaintiff further alleges that United National and/or Troy Kelley were required

19   to, but did not, refund some portion of the fee he agreed to pay.  Compl. ¶¶ 11, 13.

20         6.      According to Plaintiff, the Defendants' alleged conduct violated, among other

21   things, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-62 &

22   1964.[2]  Compl. ¶¶ 36-37.  Therefore, federal question jurisdiction exists over Plaintiff's claims

23   under 28 U.S.C. § 1331 because Plaintiff has plead claims for a violation of federal law.

24

25   _____

[2] Plaintiff alleges that United National was controlled by defendants Troy and Diane Kelley.  Compl. ¶ 3.
Plaintiff does not allege any conduct, let alone misconduct, on the part of defendant Blackstone International.

NOTICE OF REMOVAL - 2

7.      To the extent the Complaint alleges violations of state statutes or common law, this Court has supplemental jurisdiction over any such claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as Plaintiff's claims under federal law and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

8.      Because some of Plaintiff's claims arise under the laws of the United States, removal of this entire cause of action is therefore appropriate.

## II.     This Court is the Proper Venue

9.      The original Complaint was filed in King County, Washington.  Accordingly, removal to the United States District Court for the Western District of Washington is proper because this Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  28 U.S.C. §§ 1441(a) and 1446(a).

      **a.      <u>Intradistrict Assignment</u>**

10.     Because this case was initially filed in King County, Washington, assignment to the Seattle Division is proper pursuant to Local Civil Rule 3(d).

## III.    Notice

11.     Pursuant to 28 U.S.C. §1446(d), Defendants will promptly give written notice of removal to Plaintiff and will file a copy of the notice with the clerk of Superior Court of Washington, King County.

      WHEREFORE, Defendants Troy Kelley, Diane Kelley, Blackstone International, Inc., and United National, LLC, request this Court assume jurisdiction of this cause, enter such

NOTICE OF REMOVAL - 3

1   orders and/or judgments necessary to protect its jurisdiction, and proceed with this case to its

2   completion.

3        DATED this 28th day of December, 2015.

4               CALFO HARRIGAN LEYH & EAKES LLP

5

6               By     *s/Angelo J. Calfo*
                       Angelo J. Calfo, WSBA #27079

7                      999 Third Avenue, Suite 4400
                       Seattle, WA  98104

8                      Telephone:  (206) 623-1700
                       Email:  angeloc@calfoharrigan.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NOTICE OF REMOVAL - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Richard L. Pope, Jr.                    rp98007@gmail.com

*s/Susie Clifford*
_____

NOTICE OF REMOVAL - 5

# EXHIBIT A

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

1
2
3
4
5
6
7
8

**SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

9
RICHARD L. POPE, JR., individually )   NO. _____
and on behalf of all others similarly situated, )

10
)

Plaintiff, )

11
)

v. )

12
)

TROY X. KELLEY, DIANE D. KELLEY, )   COMPLAINT FOR DAMAGES

13
and the marital community comprised thereof, )
UNITED NATIONAL, LLC, and )

14
BLACKSTONE INTERNATIONAL, INC., )

15
Defendants. )   **CLASS ACTION**

16
_____)

17
**Parties**

18
    1.    Plaintiff RICHARD L. POPE, JR. is a resident of King County, Washington.

19
    2.    Defendants TROY X. KELLEY and DIANE D. KELLEY are individuals residing

20
in Pierce County, Washington.  They are married to each other and have a martial community

21
under Washington law.  All actions of either Defendant KELLEY were done for the benefit of

22
their marital community and their marital community are liable for such action,

23
    3.    Defendant UNITED NATIONAL, LLC is a Washington limited liability company

24
and is an alter ego for Defendants KELLEY under their dominion and control.

25
    4.    Defendant BLACKSTONE INTERNATIONAL, INC. is a Nevada corporation

26
doing business in the State of Washington and is an alter ego for Defendants KELLEY under the

27
dominion and control.

28
**COMPLAINT FOR DAMAGES -- 1**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1

**Jurisdiction and Venue**

2      5.      This court has proper venue and jurisdiction as the Plaintiff resides in and at least

3    one of the Defendants did business in King County, Washington and the actions complained of

4    herein, or some of them occurred in whole or in part in King County, Washington.

5

**Basis of Claim**

6      6.      Plaintiff incorporates all the allegations contained in the Superseding Indictment

7    entered on September 3, 2015 in <u>United States of America v. Troy X. Kelley</u>, United States

8    District Court for the Western District of Washington at Tacoma, No. CR15-5198RBL by

9    reference herein.  This document is attached as Exhibit 1 and consists of 160 paragraphs.  Each

10   of the incorporated paragraphs should be admitted, denied or otherwise addressed in any answer.

11     7.      Plaintiff believes Defendants started the fraudulent scheme outlined in the

12   Superseding Indictment earlier than January 1, 2006 and in fact at the same time or shortly after

13   Defendants entered into the contract with Fidelity National Title Company of Washington, Inc.

14   in October 2003 referenced in Paragraphs 15 and 16 of the Superseding Indictment.

15     8      Plaintiff believes Defendants failed to return the escrow amount in the

16   overwhelming majority of closing transactions (likely over 99%) and that there were no

17   recording, reconveyance or other charges paid out of the escrow amount in the overwhelming

18   majority of closing transactions (likely over 99%).

19     9.      Plaintiff refinanced his home at 1839 – 151st Avenue, S.E., Bellevue, Washington

20   98007 (settled on August 31, 2005), to satisfy his former wife's interest in the property, pursuant

21   to a dissolution settlement.  The escrow closing was handled by the Bellevue office of Fidelity

22   National Title Company of Washington, Inc.  There was an existing deed of trust mortgage on

23   the property owed to Chase Bank, which had originally been taken by his former wife.  Plaintiff

24   was responsible to pay off this prior mortgage in full, and also make a substantial payment to his

25   former wife for her interest in the property. Plaintiff took out a new deed of trust mortgage loan

26   from Greenpoint Funding, in order to fulfill his obligations under the decree of dissolution.

27   Plaintiff had to pay his former wife a certain sum of money and pay all closing costs.

28

**COMPLAINT FOR DAMAGES -- 2**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

10.     When Plaintiff signed the closing documents, a day or two before the settlement date, the Fidelity Title escrow closer told him that he would have to pay $120.00 for reconveyance services for the prior deed of trust to Chase Bank that was being paid off.  The escrow closer told me this money was for the fees charged for recording the reconveyance documents with the King County recorder's office, and also for the services of the reconveyance trustee.  The line item on his closing statement appeared as $120.00 for "reconveyance/tracking fee" payable to "Post Closing Dept."  Plaintiff assumed this meant the "post closing department" of Fidelity Title, and this certainly didn't sound like a business separate from Fidelity. The escrow closer never told Plaintiff this money was really going to a separate company.

11.     In reality, "Post Closing Dept." was a trade name for "United National LLC", an alter ego LLC that Troy Kelley had set up to run a purported "reconveyance tracking" business. Trpy Kelley contracted with various escrow companies (apparently mostly being Chicago Title, Wells Fargo Escrow, Old Republic Title, and Fidelity Title) to track prior home mortgage deeds of trust that were being paid off in home sales or refinancing escrow situations. Based on what the Old Republic contract with Kelley stated, the escrow companies paid over to Troy Kelley somewhere between $120 to $150 for each deed of trust that was being tracked. In all cases, Troy Kelley was entitled to retain a fixed fee ($20 in the case of the Old Republic contract) for his services. If the lender did not timely file a reconveyance, Troy Kelley was responsible for paying for the services of a reconveyance trustee and the necessary county auditor recording fees. Any moneys not used by Troy Kelley (above the $20 tracking fee and out of pocket recording and trustee fees) were supposed to be refunded directly to the escrow customer whose deed of trust was being paid off.

12.     For Plaintiff's part, the prior mortgage lender Chase Bank immediately recorded the reconveyance documents with the King County recorder's office on September 15, 2005. The a payoff statement from Chase Bank, which included the $32.00 reconveyance recording fee as part of the payoff amount that was handled through escrow. Plaintiff had already paid the lender for these services and the lender promptly recorded the reconveyance document.

**COMPLAINT FOR DAMAGES -- 3**

Lake Hills Legal Services P.C.
15600 N.E. 8th Street, # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

1    13.    So in Plaintiff's case, Troy Kelley should have only retained the reconveyance

2    tracking fee of $15.00 and returned the $105.00 remainder of the total $120.00 fee.  Troy Kelley

3    certainly did not have to pay for any county recording fees or reconveyance trustee fees, since

4    the lender Chase Bank promptly recorded these documents. However, Plaintiff never received

5    any refund whatsoever from Troy Kelley or the other Defendants or anyone else.

6                              **Class Action Allegations**

7    14.    Plaintiff brings this action individually on his own behalf and as a representative of

8    a class pursuant to Rule 23 of the Civil Rules of Superior Court.  This action is maintainable as a

9    class action under CR 23(b)(1), CR 23(b)(2) and CR 23(b)(3).

10    15.    The class consists of all persons who closed any real estate transaction in the State

11    of Washington through Chicago Title, Wells Fargo Escrow, Old Republic Title, Fidelity Title, or

12    a similar company during the period August 1, 2002 to August 31, 2008 and paid a reconveyance

13    tracking fee to any of the Defendants herein connected to a paid off deed of trust or mortgage,

14    and did not receive a refund of the (supposedly) escrowed portion of the reconveyance tracking

15    fee amount within 30 days after the reconveyance document was recorded.

16    16.    Some portion of the class members, especially those customers of Old Republic

17    Title, may have receive a portion of the escrowed amount refunded to them (especially through a

18    lawsuit Defendants settled that was filed against them by Old Republic Title).  In that case, these

19    class members would still be still entitled to have the remaining escrowed funds returned to

20    them, receive statutory 12% interest on all monies due, and trebled or other increased damages.

21    17.    The class is so numerous as to make it impracticable to bring all class members

22    before the court.  At this time, Plaintiff does not know the exact number of class members but

23    believes the class has more than 35,000 members.  Plaintiff believes the total amount of principal

24    that was defrauded from class members by Defendants to be in excess of $3.8 million.

25    18.    Plaintiff learned of Defendants' wrongful actions for the first time by reading a

26    blog on SoundPolitics.Com on September 6, 2012.  The vast majority of class members have

27    never learned that Defendants' fraudulent actions affected them at any point in time.

28

**COMPLAINT FOR DAMAGES -- 4**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1      19.    There are questions of law or fact common to the claims of all members of the

2    class.  These questions include, but are not limited to, the following:

3       (a)    Were there monies that Defendants obtained in reconveyance tracking fees,

4    in excess of the $15 to $20 basic fee for such services, that were supposed to have been held in

5    escrow and refunded to the escrow customers if not used for trustee or reconveyance fees?

6       (b)    Did Defendants breach their contracts with the escrow companies and with

7    the escrow customers by failing to promptly refund the unearned escrow fees?

8       (c)    Did Defendants commit conversion against the escrow companies and with

9    the escrow customers by failing to promptly refund the unearned escrow fees and then taking

10    hese monies from the escrow account and converting them to their own use?

11       (d)    Are Defendants' actions in failing to promptly refund the unearned escrow

12    fees and then taking these monies from the escrow account and converting them to their own use

13    unfair or deceptive acts or practices in trade or commerce under the Consumer Protection Act?

14       (e)    In committing the actions alleged in this Complaint and in the Superseding

15    Indictment, did Defendants commit the crimes of theft, money laundering, wire fraud, the other

16    offenses alleged in the Superseding Indictment and other crimes under state and federal law?

17       (f)    Do the actions of Defendants alleged in this Complaint and in the

18    Superseding Indictment constitute Criminal Profiteering as defined in Chapter 9A.82 RCW?

19       (g)    Do the actions of Defendants alleged in this Complaint and in the

20    Superseding Indictment constitute a pattern of racketeering activity under 18 USC § 1961 et seq?

21      20.    Plaintiff's claims are typical of the claims of the members of the class.   The

22    claims of all class members arise from the same general set of facts and questions of law.

23      21.    Plaintiff will fairly and adequately protect the interests of the class.

24      22.    The prosecution of separate actions by individual members of the class would

25    create a risk of (a) inconsistent or varying adjudications with respect to individual members of

26    the class which would establish incompatible standards of conduct for the defendants or (b)

27    adjudications with respect to individual class members which would as a practical matter be

28

**COMPLAINT FOR DAMAGES -- 5**

1    dispositive of the interests of the other members not parties to the adjudications or substantially

2    impair their ability to protect their interests.

3        23.     The defendants have acted or refused to act on grounds generally applicable to the

4    class.  Final injunctive relief and/or corresponding declaratory relief against the defendants is

5    appropriate with respect to the class as a whole.

6        24.     Questions of law or fact common to the members of the class predominate over

7    any questions affecting only individual members, and that a class action is superior to other

8    available methods for the fair and efficient adjudication of the controversy.

9        25.     Plaintiff is unaware of any other pending litigation concerning the controversy at

10   issue, and no litigation which has been filed by any class member against the Defendants.  A

11   handful of class members previously sued some of the escrow companies, but not the

12   Defendants.  Old Republic Title of Washington previously sued the Defendants on its own behalf

13   and received a partial settlement which may have allowed partial refunds to some class members.

14       26.     The Plaintiff class in this case is large but manageable.  Identification of class

15   members can readily be made from the business records of the defendants and from the records

16   of the escrow companies with which Defendants contracted for reconveyance tracking services.

17              **First Cause of Action – Breach of Contract**

18       27.     Defendants breached their contracts with the escrow companies, which also

19   imposed like contractual obligations on behalf of the escrow customers by failing to promptly

20   refund the unearned escrow fees after the reconveyance documents were recorded.

21       28.     Plaintiff and each class member is entitled to recover these unearned escrow fees,

22   together with 12% per annum statutory interest from the due date until these monies are paid.

23                **Second Cause of Action – Conversion**

24       29.     Defendants committed the tort of conversion by failing to promptly refund the

25   unearned escrow fees after the reconveyance documents were recorded and then taking these

26   monies from the escrow account and converting them to their own use.

27

28

   **COMPLAINT FOR DAMAGES -- 6**

30.     Plaintiff and each class member is entitled to recover these unearned escrow fees, together with 12% per annum statutory interest from the due date until these monies are paid.

### Third Cause of Action – Washington Consumer Protection Act

31.     The actions of Defendants alleged in this Complaint and in the Superseding Indictment, including but not limited to failing to promptly refund the unearned escrow fees after the reconveyance documents were recorded and then taking these monies from the escrow account and converting them to their own use, are unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce under RCW 19.86.020.

32.     Plaintiff and other class members have been injured in their business or property by violations of the Consumer Protection Act by Defendants.  These actions have injured other persons, or have had or do have the capacity to injure other persons.

33.     Under RCW 19.86.090, Plaintiff and other class members should collect their actual damages, plus trebled damages of up to $25,000.00 above actual damages for each person injured by Defendants' conduct, reasonable attorney fees, and all costs of this action.  This would entitle Plaintiff and each class member to triple the actual amount of unearned escrow fees (since none were over $12,500.00), plus 12% per annum interest from the due date until paid.

### Fourth Cause of Action – Criminal Profiteering Act

34.     The actions of Defendants alleged in this Complaint and in the Superseding Indictment, including but not limited to failing to promptly refund the unearned escrow fees after the reconveyance documents were recorded and then taking these monies from the escrow account and converting them to their own use, constitute a pattern of criminal profiteering activity as defined in RCW 9A.82.010, which have damaged Plaintiff and each class member by causing them to lose the unearned reconveyance tracking fees they were entitled to receive.

35.     Under RCW 9A.82.100, Defendants are therefore liable to Plaintiff and each class member for the actual amount of unearned escrow fees, plus 12% per annum interest from the due date until paid, plus a civil penalty of up to $250,000.00, plus reasonable attorney fees, and all costs of this action.

**COMPLAINT FOR DAMAGES -- 7**

1

### Fifth Cause of Action – Civil RICO

2   36.    The actions of Defendants alleged in this Complaint and in the Superseding

3   Indictment, including but not limited to failing to promptly refund the unearned escrow fees after

4   the reconveyance documents were recorded and then taking these monies from the escrow

5   account and converting them to their own use, constitute a pattern of racketeering activity as

6   defined in and prohibited by 18 USC § 1961 and 18 USC § 1962, which have damaged Plaintiff

7   and each class member by causing them to lose the unearned reconveyance tracking fees they

8   were entitled to receive.

9   37.    Under 18 USC § 1964, Defendants are therefore liable to Plaintiff and each class

10  member for three times the amount of unearned escrow fees, plus 12% per annum interest from

11  the due date until paid, plus reasonable attorney fees, and all costs of this action.

12

### Sixth Cause of Action – Fraudulent Transfer

13  38.    The actions of Defendants alleged in this Complaint and in the Superseding

14  Indictment, including but not limited to failing to promptly refund the unearned escrow fees after

15  the reconveyance documents were recorded and then taking these monies from the escrow

16  account and converting them to their own use, constitute a fraudulent transfer under Chapter

17  19.40 RCW.  Plaintiff and each class member are entitled to have this fraudulent transfer

18  avoided, and for Defendants to refund the unearned escrow fees with 12% per annum interest.

19

### Prayer for Relief

20  Wherefore Plaintiff prays for judgment against the Defendants as follows:

21  1.    Actual damages for Plaintiff and each class member in such sum as may be

22  determined, based upon the unearned (supposedly) escrowed portion of the each reconveyance

23  tracking fee that was supposed to be refunded when the reconveyance was recorded.

24  2.    Increased damages under RCW 19.86.090 for Plaintiff and each class member by

25  tripling actual damages that may be determined, up to $25,000.00 increase over actual damages.

26  3.    Trebling of actual damages for Plaintiff and each class member under 18 USC §

27  1964.

28

**COMPLAINT FOR DAMAGES -- 8**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1        4.    Civil penalty of up to $250,000.00 under RCW 9A.82.100 for Plaintiff and each

2    class member.

3        5.    Reasonable attorney fees pursuant to RCW 19.86.090, RCW 9A.82.100 and 18

4    USC § 1964.

5        6.    All taxable costs of this action.

6        7.    Prejudgment and postjudgment interest at 12% per annum statutory interest.

7        8.    All other general and equitable relief that may be just or appropriate.

8    Respectfully submitted this 8th day of September 2015.

9

10

11   /s/ Richard L. Pope, Jr.
     RICHARD L. POPE, JR.
12   WSBA # 21118
     Attorney for Plaintiffs

13   Lake Hills Legal Services P.C.
14   15600 N.E. 8th Street, Suite B1-358
     Bellevue, Washington  98008
15   Tel:  (425) 829-5305
     Fax:  (425) 526-5714
16   E-Mail:  rp98007@gmail.com

17

18

19

20

21

22

23

24

25

26

27

28
     **COMPLAINT FOR DAMAGES -- 9**

# EXHIBIT 1

Judge Ronald B. Leighton

Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

_SEPTEMBER 3_, 20_15_

WILLIAM M. McCOOL, Clerk

By _____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| UNITED STATES OF AMERICA, | No. CR15-5198RBL |
|---|---|
| Plaintiff, | **SUPERSEDING INDICTMENT** |
| v. | |
| TROY X. KELLEY, | |
| Defendant. | |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

### I.  Background

#### A.  *The Defendant and Relevant Entities*

1.  TROY X. KELLEY, a resident of Tacoma, Washington, holds a J.D. and an M.B.A., and is an attorney licensed to practice law in the States of California, New York, and Washington, and in the District of Columbia. TROY X. KELLEY's experience includes work as counsel, and then general counsel, for a real estate title company in California, as president of a division of that company, and as a small business owner and operator whose business served the title industry.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      2.    Blackstone International, Inc. ("Blackstone"), is an S Corporation formed

2 in the State of Nevada on or about October 26, 2000.  Since Blackstone's inception,

3 TROY X. KELLEY has been Blackstone's President and sole owner.

4      3.    Attorney Trustee Services, Inc. ("ATS"), is an S Corporation.  Originally,

5 TROY X. KELLEY's wife, D.D.K., was the President of ATS.  Subsequently, TROY X.

6 KELLEY became the President of ATS.  Through at least 2008, D.D.K. was the sole

7 owner of ATS.

8      4.    United National, LLC ("United National"), was a limited liability company

9 incorporated in Washington State on or about August 2, 2002.  TROY X. KELLEY was

10 United National's President.  Originally, Blackstone owned 50% of United National.  By

11 2008, Blackstone owned 79.3% of United National, ATS owned 18.1% of the company,

12 and a minority partner owned 2.6% of the company.  United National operated under the

13 name Post Closing Department (also known as "PCD") and provided reconveyance-

14 tracking services to real estate escrow companies.  On August 11, 2008, TROY X.

15 KELLEY cancelled United National's registration in Washington State.

16      5.    Fidelity National Title of Washington ("Fidelity") and Old Republic Title

17 ("Old Republic") were escrow companies that offered real estate settlement services in

18 Washington State.  United National d/b/a Post Closing Department, provided

19 reconveyance-tracking services to these escrow companies and others.

20     ***B.    The Reconveyance-Processing Industry***

21      6.    Generally, individuals who borrow money to purchase or refinance a home

22 ("borrowers") are required to grant a deed of trust to a trustee.  The trustee holds title to

23 the property on behalf of the lender, pursuant to that deed of trust, to secure repayment of

24 the loan.  When an underlying loan is paid in full, such as through the sale of the property

25 or through a refinancing, the lender sends the trustee proof of repayment, after which the

26 trustee transfers title back to the original borrower.  The process of transferring title back

27 to the borrower is called "reconveyance."  The reconveyance process is completed when

28 a deed of reconveyance is executed by the trustee and recorded in the recorder's office of

1   the county where the property is located.  Trustees may charge a fee to process a

2   reconveyance (a "trustee fee"), and county recording offices generally charge a fee to

3   record a reconveyance (a "county recording fee").

4         7.     Escrow companies performing real estate settlement services collect and

5   disburse loan funds and sales proceeds, and facilitate documentation of real estate

6   transactions, all in accordance with the escrow instructions of the parties to a real estate

7   transaction.  As part of their service, escrow companies also facilitate the reconveyance

8   process by collecting from borrowers fees in amounts sufficient to cover the potential

9   costs associated with the reconveyance process.

10         8.     The potential costs associated with the reconveyance process include the

11   cost of paying trustee fees and county recording fees (collectively, "reconveyance-

12   processing fees"), as well as the cost of tracking reconveyances to ensure that they are

13   completed ("reconveyance tracking").  During the period relevant to this Superseding

14   Indictment, escrow companies typically collected between $100 and $150 per

15   reconveyance (a "reconveyance fee") from borrowers to cover reconveyance-processing

16   fees and reconveyance-tracking costs.

17         9.     In many cases, lenders processed reconveyances themselves, either for a

18   minimal fee charged directly to the borrower as part of the borrower's loan payoff, or for

19   no fee.  When lenders processed reconveyances, escrow companies did not need to pay

20   reconveyance-processing costs, such as trustee fees or county recording fees.

21         10.    Rather than administer reconveyance fees and track reconveyances

22   themselves, in some cases, escrow companies contracted with outside vendors that

23   administered reconveyance fees and performed reconveyance-tracking services.  Post

24   Closing Department was a vendor utilized by escrow companies to administer

25   reconveyance fees, and track reconveyances, for the benefit of escrow parties.

26   **II.**    **Summary of Charges**

27         11.    Between about 2003 and about June 2008, TROY X. KELLEY, through

28   Post Closing Department, provided reconveyance-tracking services to Fidelity and Old

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 3

1   Republic. TROY X. KELLEY represented to Fidelity and Old Republic that, in return

2   for a flat fee per reconveyance, Post Closing Department would receive and administer

3   the full amount of reconveyance fees collected by the escrow companies from borrowers

4   and (1) track the filing of reconveyances; (2) pay any necessary reconveyance-processing

5   fees, such as trustee fees and county recording fees; and (3) refund the unused portions of

6   the reconveyance fees back to the borrowers. In reliance upon TROY X. KELLEY's

7   representations, Fidelity and Old Republic entrusted TROY X. KELLEY and Post

8   Closing Department with millions of dollars of reconveyance fees. In truth and in fact,

9   TROY X. KELLEY lied to Fidelity and Old Republic and did not administer the

10  reconveyance fees as promised. Contrary to his representations, TROY X. KELLEY did

11  not refund unused portions of reconveyance fees to borrowers, but instead fraudulently

12  retained, stole, and converted them to his own use. Based upon this conduct, Count 1 of

13  this Superseding Indictment charges TROY X. KELLEY with Possession and

14  Concealment of Stolen Property, namely, approximately $1,463,171 of unused

15  reconveyance-processing fees that should have been refunded to borrowers, as well as

16  more than $5,000, of reconveyance-tracking fees that should have been refunded to

17  escrow companies or borrowers for transactions that were not complete when TROY X.

18  KELLEY closed Post Closing Department.

19       12.  In May 2008, class action lawsuits were filed on behalf of borrowers

20  against Fidelity and Old Republic, seeking, among other things, the return of

21  reconveyance fees charged by the escrow companies for services that were in fact

22  performed by lenders. In June 2008, anticipating that borrowers and escrow companies

23  might seek the return of such fees from Post Closing Department, TROY X. KELLEY,

24  attempted to conceal the funds by moving them rapidly between numerous bank

25  accounts, and eventually depositing the funds into an account in the name of a newly-

26  created shell entity controlled by TROY X. KELLEY. TROY X. KELLEY also

27  attempted to divert attention from himself, and to discredit and disqualify one of the

28  named plaintiffs in the civil suits, by issuing a refund check to him. In about December

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  2009, Old Republic sued TROY X. KELLEY, seeking the return of unused reconveyance
2  fees. In the course of the litigation with Old Republic, TROY X. KELLEY gave false
3  testimony during a deposition, and lied in sworn declarations submitted to the Court.
4  Based upon this conduct, Counts 2- 5 of this Superseding Indictment charge TROY X.
5  KELLEY with False Declarations.

6       13.    Beginning in 2011, after all of the litigation against him had been resolved,
7  TROY X. KELLEY sought ways to spend for his own benefit the unlawfully-retained
8  reconveyance fees, while concealing and disguising the nature and source of his assets.
9  As an elected official, and later, as a candidate for state-wide office, TROY X. KELLEY
10  well knew that the sources of his income and assets would continue to be subject to
11  reporting requirement and likely would be subject to additional scrutiny. Therefore,
12  starting in 2011 and continuing through 2015, TROY X. KELLEY withdrew $245,000
13  annually from the pool containing his illicit proceeds, and, rather than pay himself
14  directly, funneled the money through an account held in the name of his long-existing S
15  Corporation, Blackstone. As a result, TROY X. KELLEY made it appear that a company
16  he long had owned earned annually some form of legitimate income, while concealing
17  and disguising and attempting to conceal and disguise the fact that TROY X. KELLEY
18  was simply drawing down the accumulated proceeds he had unlawfully taken through his
19  prior business, Post Closing Department. Based upon this conduct, Counts 6-10 of this
20  Superseding Indictment charge TROY X. KELLEY with Money Laundering.

21       14.    Finally, TROY X. KELLEY engaged in a long-running scheme to avoid
22  and reduce his taxes on the unlawfully-retained reconveyance fees. For the tax years
23  between 2006 and 2008, TROY X. KELLEY fraudulently underreported United
24  National's and his own gross receipts and income, and avoided declaring and paying
25  taxes on the reconveyance fees that he had unlawfully retained. Beginning in 2011, after
26  all of the litigation against him had been resolved, TROY X. KELLEY began
27  withdrawing $245,000 annually from the pool of unlawfully-retained reconveyance fees.
28  TROY X. KELLEY reported the $245,000 that he drew down annually as income to his

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 5

1  wholly-owned S Corporation, Blackstone. For the 2011 and 2012 tax years, however,

2  TROY X. KELLEY sought to reduce his tax by fraudulently claiming as business

3  deductions, on Blackstone's return, personal and campaign-related expenditures that were

4  not legitimate business expenses. Finally, when Internal Revenue Service (IRS) agents

5  interviewed TROY X. KELLEY in April 2013, TROY X. KELLEY falsely stated he

6  reported $245,000 of income in each of 2011 and 2012, because he was continuing to

7  perform reconveyance-tracking services and was only reporting income as he earned it.

8  Based upon this conduct, Counts 11-17 of this Superseding Indictment charge TROY X.

9  KELLEY with Corrupt Interference with Internal Revenue Laws, with Filing False

10  Income Tax Returns, and with False Statements to IRS Agents.

11  **III.   The Reconveyance-Fee Fraud Scheme**

12      *A.    The Fraud Relating to Fidelity*

13      15.    During 2003, TROY X. KELLEY entered into a business agreement with

14  Fidelity. Both orally and in writing, TROY X. KELLEY represented that, for a flat fee of

15  $15 per file, Post Closing Department would (1) provide Fidelity reconveyance-tracking

16  services for real estate transactions in King and Snohomish Counties; (b) receive from

17  Fidelity the full amount of reconveyance fees entrusted to Fidelity by borrowers; and,

18  (c) where Post Closing Department was not required to use the full amount of those fees

19  to pay trustee fees and/or county recording fees, or its own $15 reconveyance-tracking

20  fee, return the unused portion of reconveyance fees to borrowers.

21      16.    A written agreement, signed by Fidelity's Operations Manager on October

22  9, 2003, defined Fidelity as the "Client," and borrowers as "Customers," and provided, in

23  relevant part:

24          Fees are as follows: $15.00 post closing tracking fee per
            item.
25                                    * * *

26          Payment Terms:
27          Client shall collect post closing fee and make check payable
            to PCD (leave the check to be picked up by representative
28          and/or coordinator). Expenses such as trustee fees and
            recording fees that are associated with a file will be advanced

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 6

and charged to that file.  At the completion of the post closing documentation if extra funds are left over, PCD shall forward the funds to Customer, with sample letter attached.

17.     In reliance upon TROY X. KELLEY's representations and promises, beginning in 2003, Fidelity began using Post Closing Department to perform reconveyance-tracking work, and caused borrowers to authorize disbursement of funds from Fidelity to Post Closing Department for reconveyance processing and tracking. Fidelity provided Post Closing Department files accompanied by checks made payable to Post Closing Department in the full amount of the reconveyance fees that had been entrusted to Fidelity for reconveyance processing and tracking by borrowers.  TROY X. KELLEY and Post Closing Department employees subsequently cashed those checks, depositing the funds into an account at Columbia Bank that Post Closing Department used to hold funds received from Fidelity.  In doing so, TROY X. KELLEY and the employees caused wire communications to be transmitted in interstate commerce in order to effect the transactions.

18.     To track Fidelity's reconveyances, a Post Closing Department employee entered the data for each reconveyance into a line in a large spreadsheet.  Post Closing Department then tracked the reconveyances by logging onto county recorder's offices' websites to check the status of the reconveyances.  When a title was reconveyed, an employee noted the number assigned to the reconveyance in the spreadsheet.  Because the employees understood that Post Closing Department received a flat $15 fee per transaction tracked regardless of the amount of work involved, they did not use the spreadsheet to record the specific tasks performed on each file.

19.     Because major lenders processed the vast majority of the reconveyances Post Closing Department tracked, Post Closing Department generally did not need to perform additional work, or pay additional trustee fees or county recording fees, to effect reconveyances.  As a result, in the vast majority of cases, Post Closing Department received from Fidelity, and retained at the completion of the reconveyances, funds

1  entrusted to Fidelity to cover possible reconveyance-processing costs that were not
2  actually needed to pay a trustee fee or a county recording fee.

3       20.    By no later than in or about January 2006, TROY X. KELLEY devised a
4  scheme and artifice to defraud Fidelity and borrowers, to obtain money from Fidelity by
5  means of false and fraudulent representations, and to steal money from Fidelity and from
6  borrowers, namely to take and convert to his own use and benefit reconveyance-
7  processing fees that TROY X. KELLEY knew should have been refunded to borrowers.

8       21.    TROY X. KELLEY decided not to pay refunds to borrowers, all the while,
9  continuing to keep up a pretense that Post Closing Department was administering fees as
10  promised, and continuing to obtain from Fidelity fees entrusted to Fidelity by borrowers.
11  Unbeknownst to Fidelity and borrowers, and contrary to his representations and
12  promises, TROY X. KELLEY directed Post Closing Department employees to issue
13  refund checks in limited circumstances, typically, when an escrow company or a
14  borrower complained that the borrower had not received a refund to which the borrower
15  was entitled.

16       22.    To conceal further from Fidelity the fact that Post Closing Department was
17  keeping unused reconveyance-processing fees, TROY X. KELLEY falsely and
18  fraudulently represented to Fidelity that Post Closing Department continued to charge
19  only a flat $15 fee per transaction tracked.

20       23.    For example, on February 16, 2006, TROY X. KELLEY sent an email to
21  an employee at Fidelity, advising that Ticor Title was raising its trustee fees to $120,
22  suggesting that Fidelity might want to do the same, and noting that PCD would hold only
23  $105 in processing fees "after our $15 fee."

24       24.    Similarly, on May 9, 2007, TROY X. KELLEY caused an employee to
25  send an email to an employee at Fidelity, stating that Post Closing Department collected
26  $15 per file, and that, in tracking each file, Post Closing Department sent letters and made
27  telephone calls.

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 8

25.     And on July 31, 2007, TROY X. KELLEY sent an email to an employee at Fidelity, stating that he wanted "to confirm our fees are $15 per deed of trust tracked and we hold what you direct us to in order that the trustee gets paid and records the reconveyance." In reliance upon these false representations, Fidelity continued to cause borrowers to instruct at closing that reconveyance fees entrusted to Fidelity be disbursed to Post Closing Department, and Fidelity continued to disburse such fees to Post Closing Department.

26.     In approximately March 2008, Fidelity decided to stop using Post Closing Department to track reconveyances. After being notified of that fact, on March 14, 2008, TROY X. KELLEY sent an employee at Fidelity an email in which he offered to continue tracking Fidelity's reconveyances for a flat fee of $15 per transaction tracked, while allowing Fidelity to retain the remainder of the reconveyance fees. The email stated, in relevant part:

> I just wanted to let you know that there is a reconveyance
> service model that allows you to hold the income generated
> and we are paid though a monthly invoice that is $15 per file.

27.     On April 7, 2008, TROY X. KELLEY sent a similar email to another employee at Fidelity, stating, in relevant part:

> I want to confirm the option that we can track new payoffs
> . . . . Our price is still only $15 per item and can be invoiced
> monthly. . . . We operate this way for six counties in Oregon
> and we even advance substantial recording fees on Fidelity's
> behalf. We do all the work after close, and Fidelity holds the
> money.

Despite TROY X. KELLEY's emails, Fidelity stopped using Post Closing Department in March 2008.

28.     After Fidelity stopped using Post Closing Department to provide reconveyance-tracking services, TROY X. KELLEY terminated one of the Post Closing Department employees who had been primarily responsible for performing the work for Fidelity. In approximately May 2008, TROY X. KELLEY picked up the Post Closing

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 9

1 | Department documents remaining at the employee's residence, and caused all Post
2 | Closing Department-related files to be deleted from the employee's computer.

3 |     29.    Because major lenders had processed the vast majority of the
4 | reconveyances Post Closing Department tracked for Fidelity, Post Closing Department
5 | retained a substantial amount of unused reconveyance-processing fees. Between January
6 | 2006 and March 2008, Fidelity asked Post Closing Department to track approximately
7 | 21,158 reconveyances. Of these, Fidelity collected reconveyance fees in an amount
8 | designed to cover reconveyance-processing costs, as well as reconveyance-tracking costs,
9 | in approximately 18,208 cases.

10 |     30.    By March 2008, the vast majority of the files tracked had reconveyed.
11 | With respect to those reconveyed transactions, Post Closing Department had been
12 | required to issue only approximately 460 checks to pay reconveyance-processing fees.
13 | Accordingly, Post Closing Department should have refunded unused reconveyance-
14 | processing fees to thousands of borrowers. In fact, however, Post Closing Department
15 | had issued only approximately 25 refund checks, totaling approximately $4,340, to
16 | borrowers from the Columbia Bank account that it used to conduct Fidelity business.
17 | (Post Closing Department had issued approximately 423 additional checks to pay
18 | reconveyance-processing fees from bank accounts not related to specific escrow
19 | companies, and had issued approximately 34 additional refund checks, totaling
20 | approximately $8,837, from such accounts. Some of those checks may have related to
21 | borrowers in transactions that Post Closing Department tracked for Fidelity.)

22 |     31.    Instead of refunding unused reconveyance-processing fees to borrowers,
23 | TROY X. KELLEY retained the vast majority of these fees in the Columbia Bank
24 | account from which he conducted Fidelity business. As a result, the balance in this
25 | account, which was $745,121 on January 1, 2006, had grown to $2,361,181 by June
26 | 2008. (In addition, during the same period, although Post Closing Department was
27 | entitled to only approximately $317,370 for reconveyance-tracking services that it

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  performed for Fidelity, TROY X. KELLEY transferred approximately $443,006 from the

2  account to his own personal account at Bank of America.)

**B.    The Fraud Relating to Old Republic**

32.    By no later than April 2006, TROY X. KELLEY devised a scheme and

artifice to defraud Old Republic and borrowers, to obtain money from Old Republic by

means of false and fraudulent representations, and to steal money from Old Republic and

borrowers.  This scheme was functionally-identical to the scheme to defraud Fidelity.

33.    On or about April 10, 2006, TROY X. KELLEY met with a Senior Vice

President of Old Republic.  TROY X. KELLEY falsely and fraudulently represented that,

for a flat fee of $20.00 per reconveyance, Post Closing Department would (a) provide

reconveyance-tracking services for real estate transactions in which Old Republic acted

as the escrow agent; (b) receive from Old Republic the full reconveyance fees entrusted

to Old Republic by borrowers; and, (c) where Post Closing Department was not required

to use the full reconveyance fees to pay trustee fees and county-recording fees, or its own

$20 reconveyance-tracking fee, it would return the unused reconveyance-processing fees

to borrowers.

34.    On or about the following day, TROY X. KELLEY sent the Old Republic

officer an email in which TROY X. KELLEY stated that he had created a refund letter

for a client who "wanted to hit the issue of the refund and integrity extra hard."  The

letter provided, in relevant part:

> To ensure that the reconveyance is done properly, Old
> Republic collects a Post Closing fee for each reconveyance.
> A portion of this fee is charged to track county records for
> your reconveyance and the balance is charged so that Old
> Republic or another trustee can process your reconveyance if
> additional [funds] are needed.  In your case, the county
> records show the reconveyance document has been recorded,
> so we can close our file and we are refunding you the excess
> processing fee.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 11

35.     In May 2006, Old Republic and Post Closing Department signed an agreement for Post Closing Department to provide reconveyance-tracking services to Old Republic. The agreement provided, in relevant part:

> Fees are as follows:
>
> $20.00 post closing tracking fee per item,
>          fee includes management of funds due trustees &
>          client refunds
>                              * * *

Additional Terms and Conditions:

> PCD shall provide client with monthly progress reports
> of reconveyance activity on each of client's files being
> tracked as well as an accounting on all funds received
> from client that have been disbursed and/or refunded
> to principals.

36.     In truth and in fact, however, TROY X. KELLEY did not intend for Post Closing Department to issue refund checks to the vast majority of borrowers to whom refunds were owed. Instead, TROY X. KELLEY intended to take and convert to his own benefit reconveyance-processing fees that TROY X. KELLEY knew should have been refunded to borrowers.

37.     In June 2006, in reliance upon TROY X. KELLEY's representations and promises, Old Republic began using Post Closing Department to provide reconveyance-tracking services. Old Republic caused borrowers to instruct at closing that reconveyance fees entrusted to Old Republic be disbursed to Post Closing Department, and Old Republic disbursed such fees to Post Closing Department.

38.     Old Republic provided Post Closing Department files accompanied by checks made payable to Post Closing Department in the full amount that had been entrusted to Old Republic for reconveyance processing and tracking by borrowers. TROY X. KELLEY and Post Closing Department employees subsequently cashed those checks, depositing the funds into an account at Columbia Bank that Post Closing Department used to hold funds received from Old Republic. In doing so, TROY X.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  KELLEY and the employees caused wire communications to be transmitted in interstate
2  commerce in order to effect the transactions.

3      39. To track Old Republic's reconveyances, Post Closing Department
4  employees entered the data for each reconveyance into a line in a large spreadsheet. Post
5  Closing Department then tracked the reconveyances by logging onto county recorder's
6  offices' websites to check the status of the reconveyances. When a title was reconveyed,
7  an employee noted the number assigned to the reconveyance in a spreadsheet. Because
8  employees understood that Post Closing Department received a flat $20 fee per
9  transaction tracked regardless of the amount of work involved, the employees did not use
10  the spreadsheet to record the specific tasks they performed on each file.

11      40. Unbeknownst to Old Republic and borrowers, and contrary to his
12  representations and promises, TROY X. KELLEY directed Post Closing Department
13  employees to issue refund checks in only two limited situations. First, when an escrow
14  company or a borrower complained that the borrower had not received a refund to which
15  the borrower was entitled, TROY X. KELLEY directed an employee to issue a refund
16  check to that borrower. Second, on rare occasions, TROY X. KELLEY directed Post
17  Closing Department employees to issue small batches of refund checks. TROY X.
18  KELLEY did this either to respond to questions from Old Republic, or to create a defense
19  in the event that he subsequently was questioned about Post Closing Department's
20  actions.

21      41. To conceal from Old Republic the fact that Post Closing Department was
22  keeping unused reconveyance-processing fees, TROY X. KELLEY falsely and
23  fraudulently represented to Old Republic that Post Closing Department continued to
24  charge only a flat $20 fee per transaction tracked. For example, on March 26, 2007, a
25  representative of Old Republic emailed Post Closing Department asking, among other
26  things, "[d]o you have a fee schedule . . . ?" TROY X. KELLEY caused an employee of
27  Post Closing Department to respond, "[t]he fee is $20 flat for each item (each DOT to be
28  tracked)."

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

42.     On July 26, 2007, TROY X. KELLEY again represented that Post Closing Department charged a flat fee in an email to an Old Republic employee in which he stated, in relevant part:

> It seems that most companies are raising their trustee (recon) fee by $10 to offset the two County Recorder's increases. Thus they are having us increase the funds held by $10. Our $20 tracking fee does NOT change.

43.     At some point, Old Republic employees in fact requested proof that Post Closing Department was using reconveyance fees appropriately. Thereafter, TROY X. KELLEY regularly directed a Post Closing Department employee to produce "zeroed out" spreadsheets. These spreadsheets showed that all reconveyance fees relating to borrowers whose reconveyances were complete had been (1) paid out as third-party fees to trustees or county recorder's offices, or (2) refunded to borrowers. TROY X. KELLEY provided the employee the check number that supposedly had been used to make one payment, and directed that the employee have the spreadsheets show that payments relating to other borrowers had been made using the next-in-sequence checks.

44.     After the Post Closing Department employee prepared "zeroed out" spreadsheets that falsely showed that large numbers of third-party and refund payments had been made, TROY X. KELLEY caused the spreadsheets to be provided to the Old Republic personnel who had requested the information as supposed proof that Post Closing Department was handling reconveyance fees appropriately. In truth and in fact, TROY X. KELLEY well knew that Post Closing Department had not made the payments to trustees and county recorder's offices shown in the spreadsheets, and that it was not paying refunds as required.

45.     Because major lenders processed the vast majority of the reconveyances that Post Closing Department tracked for Old Republic, Post Closing Department retained a substantial amount of unused reconveyance-processing fees. Between June 2006 and June 2008, Old Republic asked Post Closing Department to track approximately 11,773 reconveyances. Of these, Old Republic collected reconveyance

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 14

1   fees in an amount designed to cover reconveyance-processing costs, as well as

2   reconveyance-tracking costs, in approximately 9,072 cases.

3       46.     By June 2008, more than 3,500 of the reconveyances that Post Closing

4   Department was tracking for Old Republic had been completed. With respect to those

5   reconveyed transactions, Post Closing Department had been required to issue only

6   approximately 150 checks to pay reconveyance-processing fees. Accordingly, Post

7   Closing Department should have refunded unused reconveyance-processing fees to

8   thousands of borrowers. In fact, however, Post Closing Department issued only

9   approximately 30 refund checks, totaling approximately $5,660, to borrowers. (Post

10  Closing Department had issued approximately 423 additional checks to pay

11  reconveyance-processing fees from bank accounts not related to specific escrow

12  companies, and had issued approximately 34 additional refund checks, totaling

13  approximately $8,837, from such accounts. Some of those checks may have related to

14  borrowers in transactions that Post Closing Department tracked for Old Republic.)

15      47.     Instead of refunding unused reconveyance-processing fees to borrowers,

16  TROY X. KELLEY retained the vast majority of these fees in the Columbia Bank

17  account from which he conducted Old Republic business. As a result, the balance in this

18  account had grown to $888,949 by June 2008. (In addition, between June 2006 and June

19  2008, TROY X. KELLY transferred approximately $95,000 from the account to his

20  personal account at Bank of America.)

21  **IV.    The Tax Fraud Scheme**

22      48.     Under federal law relating to taxation, income must be reported in the tax

23  year in which it is received or earned.

24      49.     IRS Form 1065, U.S. Return of Partnership Income ("Form 1065"), is an

25  IRS form used to report the income and deductions of a partnership. Generally,

26  partnership income flows through to partners, according to their share in the partnership.

27  United National reported its income as a partnership using IRS Form 1065. From 2006

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 15

1  through 2008, United National's income flowed through to its partners, including
2  Blackstone and ATS.

3       50.    IRS Form 1120S, U.S. Income Tax Return for an S Corporation ("Form
4  1120S") is an IRS form used to report the income and deductions of an S Corporation.
5  S Corporation income flows through to the corporation's owners, according to their share
6  in the S Corporation. Blackstone and ATS reported their income using Form 1120S.
7  From 2006 through 2008, Blackstone's income flowed through to its sole owner, TROY
8  X. KELLEY, and ATS' income flowed through to its sole owner, D.D.K.

9       51.    IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), is an
10 IRS form used by individual taxpayers to report their annual income, deductions, and
11 credits, and their tax due and owing.

12      52.    Having fraudulently obtained and stolen funds from Fidelity, Old Republic,
13 and borrowers, TROY X. KELLEY sought to avoid payment of taxes on those funds. In
14 addition, TROY X. KELLEY realized that the escrow companies and borrowers might
15 seek the return of their funds. Accordingly, TROY X. KELLEY particularly sought to
16 avoid payment of taxes on the funds until after any such potential claims were resolved.
17 As a result, for tax years between 2006 and 2008, TROY X. KELLEY underreported the
18 income he earned.

19      53.    On or about February 28, 2007, TROY X. KELLEY filed a Form 1065
20 partnership return for United National for the tax year 2006. On or about February 28,
21 2008, TROY X. KELLEY filed a Form 1065 partnership return for United National for
22 the tax year 2007. And, on or about October 9, 2008, TROY X. KELLEY filed a Form
23 1065 partnership return for United National for the tax year 2008.

24      54.    These Forms 1065 were false in that they underreported income United
25 National earned between 2006 and 2008 by an aggregate amount of more than
26 $3,000,000. By underreporting this income, which ultimately flowed through to his and
27 D.D.K's joint personal Forms 1040, TROY X. KELLEY reduced the individual income
28

1  taxes he was required to pay for tax years 2006 through 2008 by approximately

2  $1,000,000.

3       55.    In particular, the Form 1065 that TROX X. KELLEY filed for United

4  National for the tax year 2008, was false in that it underreported income United National

5  earned during 2008 by in excess of approximately $304,019. By underreporting this

6  income, which ultimately flowed through to his and D.D.K.'s personal Form 1040

7  Individual Income Tax Return, TROY X. KELLEY reduced the individual income taxes

8  he was required to pay for tax year 2008 by approximately $100,000.

9  **V.    Obstruction of Civil Lawsuits**

10       56.    On May 14, 2008, class action lawsuits were filed in the United States

11  District Court for the Western District of Washington against Fidelity and Old Republic.

12  The class actions, *Cornelius v. Fidelity National Title Insurance*, C08-0754MJP (W.D.

13  Wash.), and *McFerrin v. Old Republic Title*, C08-5309BHS (W.D. Wash.), alleged,

14  among other things, that Fidelity and Old Republic collected reconveyance-processing

15  fees from borrowers, that, even though they went unused, "[n]o portion of the

16  reconveyance processing fees [were] credited or returned with the final settlement," and

17  that the two companies "kept these duplicative and unearned sums for no settlement

18  services rendered . . . ." TROY X. KELLEY learned of the existence of these class action

19  lawsuits no later than the day after they were filed, that is, May 15, 2008.

20       ***A.    TROY X. KELLEY Falsely Claims that Post Closing Department***

21               ***Previously Provided a Refund to F.C.***

22       57.    In *Cornelius v. Fidelity National Title*, Post Closing Department had

23  performed the tracking services for the lead plaintiff, F.C.'s, real estate transaction. As

24  TROY X. KELLEY well knew, Fidelity had delivered to Post Closing Department the

25  $280 in reconveyance fees entrusted to Fidelity by F.C., to cover two reconveyances

26  involved in F.C.'s refinance.

27       58.    As TROY X. KELLEY also well knew, despite the fact that Post Closing

28  Department had not been required to pay any trustee fees or county recording fees, Post

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 17

1  Closing Department had kept the entire reconveyance fee, rather than refund all but the

2  $30 to which it was entitled for tracking two reconveyances. To divert attention from this

3  fact, and thereby seek to avoid being made a defendant in the class action lawsuits, and

4  also to discredit and disqualify F.C. as a plaintiff, TROY X. KELLEY sought to convince

5  F.C. that Post Closing Department had timely sent him a refund of his reconveyance-

6  processing fees.

7      59.    On May 16, 2008, at 9:17 a.m., TROY X. KELLEY used an ATM at a

8  Bank of America branch near his home to withdraw $300 in cash from his personal Bank

9  of America account. TROY X. KELLEY immediately traveled to a nearby Washington

10  Mutual Bank branch. There, at 9:27 a.m., TROY X. KELLEY used the cash to purchase

11  a $250 cashier's check payable to F.C. To avoid fees associated with the purchase of the

12  cashier's check, TROY X. KELLEY provided Washington Mutual Bank with the account

13  number for his Washington Mutual Bank campaign finance account in the name of

14  Friends of Troy Kelley. Finally, because he paid for this check using money withdrawn

15  from his personal account, TROY X. KELLEY wrote a check dated May 16, 2008, on the

16  Post Closing Department account at Columbia Bank that he used for Fidelity business,

17  and made it payable to himself in the amount of $250. On the memo line, TROY X.

18  KELLEY wrote the word "reimbursement."

19      60.    TROY X. KELLEY caused the $250 cashier's check that he had purchased

20  to be mailed to F.C. In an accompanying letter, TROY X. KELLEY acknowledged that

21  Post Closing Department was entitled to a flat reconveyance-tracking fee of $15 per

22  reconveyance, and falsely claimed that Post Closing Department previously had refunded

23  the remainder of F.C.'s reconveyance fees to F.C., but that F.C. had failed to cash Post

24  Closing Department's check. The letter, which was not signed, provided in relevant part:

25          Dear [F.C.]:

26          A review of our records shows that you did not cash
27          our check of January 7, 2008. The letter mailed to you was
            not returned by the post office, and you have not contacted
28          Fidelity National Title or The Post Closing Department since

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 18

the time your escrow closed. That check is now stale dated and you should not cash it.

We are enclosing an official bank check to zero out your account balance, and mailing it to you with proof of mailing.

The enclosed official bank check is for $250. Fidelity National Title collected $140 on the payoff of each deed of trust. $15 was charged to track each reconveyance. There was a balance on each deed of trust of $125 when the beneficiary secured the reconveyance. This recording of the reconveyance may have been after being contacted by the Post Closing Department to confirm that the document was being processed. Thus, you are being refunded $125 for each deed of trust that was paid off in escrow for a total of $250.

61.     TROY X. KELLEY also included with the cashier's check a copy of the letter that Post Closing Department allegedly had sent to F.C. on January 7, 2008. In the letter, TROY X. KELLEY again acknowledged that Post Closing Department was entitled to retain only a flat $15 tracking fee. TROY X. KELLEY fraudulently placed a slightly-incorrect address in the letter's heading in an attempt to create a plausible explanation for the fact that it never had been delivered to F.C.

**B.      *TROY X. KELLEY Conceals Post Closing Department's Money***

62.     Within a month after learning of the class action lawsuits, TROY X. KELLEY sought to conceal $3,782,226 held in Post Closing Department's Columbia Bank accounts by moving the money through a series of convoluted wire transfers through various newly-opened bank accounts. As part of this series of transfers, TROY X. KELLEY transferred the money out of the State of Washington and into accounts opened in the name of entities not associated with United National or Post Closing Department.

63.     On June 10, 2008, TROY X. KELLEY opened an account at Wells Fargo Bank in the name of United National. On June 12, 2008, TROY X. KELLEY wire transferred (1) $2,361,181 from the Columbia Bank account that he had used for Fidelity

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 19

1  business, (2) $888,949 from the Columbia Bank account that he had used for Old

2  Republic business, and (3) $532,096 from the Columbia Bank account number that he

3  had used for Stewart Title business, for a combined total of $3,782,226, into the newly

4  opened account at Wells Fargo Bank.

5       64.    On June 12, 2008, TROY X. KELLEY opened an account at U.S. Bank in

6  the name of United National. On June 13, 2008, TROY X. KELLEY wire transferred

7  $3,785,667 from the United National account at Wells Fargo Bank to the newly-opened

8  United National account at U.S. Bank.

9       65.    On June 17, 2008, TROY X. KELLEY opened an account at Nevada State

10  Bank in the name of Blackstone. On June 18, 2008, TROY X. KELLEY wire transferred

11  $3,784,619 from the United National account at U.S. Bank to the newly-opened

12  Blackstone account at Nevada State Bank in Nevada.

13       66.    On June 23, 2008, TROY X. KELLEY formed Berkeley United, LLC

14  ("Berkeley United"), a Nevada limited liability company. At approximately the same

15  time, TROY X. KELLEY formed Wellington Trust, a trust organized under the laws of

16  Belize. Although TROY X. KELLEY did not technically own Wellington Trust, for all

17  practical purposes, TROY X. KELLEY controlled the trust, which operated for his

18  benefit. Wellington Trust owned 99% of Berkeley United. Blackstone owned the

19  remaining 1%.

20       67.    On June 26, 2008, TROY X. KELLEY opened an account at Vanguard in

21  the name of Berkeley United. On June 27, 2008, TROY X. KELLEY transferred

22  $3,634,673 from the Blackstone account at Nevada State Bank, in Nevada, to the newly-

23  opened Berkeley United account at Vanguard, in Pennsylvania.

24       68.    Between January 2006 and June 2008, Post Closing Department failed to

25  refund to borrowers (in the case of completed reconveyances) or to Fidelity or Old

26  Republic (in the case of reconveyances that had not yet been completed when Post

27  Closing Department ceased operations), a total of at least approximately $2,964,679. Of

28  this amount, at least approximately $1,618,744 was included in money that TROY X.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 20

1  KELLEY transferred to the Blackstone account at the Bank of Nevada on June 18, 2008,

2  and at least approximately $1,463,171 was included in the money that TROY X.

3  KELLEY held in the Berkeley United account at Vanguard on January 1, 2011.

4       **C.**    ***TROY X. KELLEY Shuts Down Post Closing Department***

5       69.    In approximately June 2008, TROY X. KELLY transferred Post Closing

6  Department's two remaining employees in the State of Washington from Post Closing

7  Department's payroll to the payroll of ATS. On the evening of June 25, 2008, a fire was

8  reported at the Stewart Title offices in Everett, Washington. By 11:00 p.m., on June 25,

9  2008, Stewart Title had burned to the ground. TROY X. KELLEY subsequently

10  represented that all of Post Closing Department's records had been destroyed in that fire

11  and in a subsequent crash of his computer.

12       70.    On August 11, 2008, having shut down Post Closing Department's

13  operations in the States of Washington and Oregon, TROY X. KELLEY filed a

14  Certificate of Withdrawal/Cancellation with the Washington State Secretary of State,

15  thereby immediately canceling the registration of United National, d/b/a Post Closing

16  Department.

17       71.    On September 23, 2008, after learning of the existence of Post Closing

18  Department, the class action plaintiffs served TROY X. KELLEY with subpoenas

19  demanding that he produce books and records. On that same date, to ensure his ability to

20  further conceal the funds he previously had hidden from the class action litigants, TROY

21  X. KELLEY submitted to Vanguard an International Wire Option Form, providing him

22  with the option of wiring funds from the Berkeley United account at Vanguard, to an

23  account in the name of Wellington Trust at Atlantic International Bank in Belize.

24       **D.**    ***Old Republic Sues TROY X. KELLEY, and TROY X. KELLEY Seeks to***

25           ***Conceal from Old Republic the Location of its Funds and Makes False***
         ***Declarations in a Deposition***

26

27       72.    On March 3, 2009, counsel for class-action defendant Old Republic filed a

28  third-party complaint against TROY X. KELLEY charging, among other things, that, by

    failing to refund unused reconveyance-processing fees to borrowers, Post-Closing

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 21

1  Department had breached its agreement with, and been unjustly enriched to the detriment
2  of, Old Republic.

3       73.    Between March 2009, and September 8, 2009, counsel for Fidelity sought
4  to locate the stolen funds that TROY X. KELLEY had concealed.  They did so by issuing
5  subpoenas to Columbia Bank, Wells Fargo Bank, Washington Mutual Bank, U.S. Bank,
6  HSBC, and, ultimately, on September 8, 2009, to the Vanguard Group.

7       74.    On July 9, 2009, and October 29, 2009, after finding that Old Republic,
8  which had disclosed the payment of reconveyance fees to Post Closing Department in the
9  settlement document that the plaintiffs signed at their closing, had not breached any
10  agreement with, or duty of good faith to, the plaintiffs, the Court dismissed the class
11  action lawsuit against Old Republic.  Likewise, on April 1, 2010, the Court dismissed the
12  class action lawsuit against Fidelity.

13       75.    On December 10, 2009, Old Republic filed a new lawsuit against TROY X.
14  KELLEY, in King County Superior Court.  On June 6, 2010, that lawsuit was removed to
15  the United States District Court for the Western District of Washington, *Old Republic*
16  *Title, Ltd. v. Troy X. Kelley, et al.*, No. C10-0038JLR (W.D. Wash.).  All of Old
17  Republic's claims stemmed from its core allegation that TROY X. KELLEY had agreed,
18  in June 2006, to perform reconveyance-tracking services for a flat fee of $20 per escrow
19  transaction, and to refund all other unused reconveyance fees to borrowers, but that
20  TROY X. KELLEY instead improperly had kept the unused fees.

21       76.    As part of the civil discovery in the *Old Republic Title* case, written
22  interrogatories were served upon TROY X. KELLEY.  A key objective of these
23  interrogatories was locating the reconveyance fees that were entrusted to Old Republic
24  and then provided to Post Closing Department pursuant to borrowers' escrow
25  instructions.  In his responses to those interrogatories, TROY X. KELLEY repeatedly
26  sought to conceal the Berkeley United account at Vanguard that held the fees.

27       77.    Thus, Interrogatory 15 of Old Republic's First Set of Interrogatories
28  required TROY X. KELLEY to disclose all entities in which he held an ownership

1  interest. On February 22, 2010, TROY X. KELLEY submitted a response that objected

2  to the interrogatory in general terms and did not provide any substantive response. On

3  March 25, 2010, TROY X. KELLEY submitted a supplemental response stating that his

4  response to another interrogatory (which he described as Interrogatory 15, but by which

5  he likely intended to refer to Interrogatory 16) responded to the question. On July 26,

6  2010, TROY X. KELLEY again supplemented his response, stating:

- The Kelleys were and are the sole owners of the stock of Blackstone International, Inc.;
- the Kelleys were the sole owners of the LLC interest in United National, LLC, prior to its cancellation;
- the Kelleys were the sole owners of the LLC interest in United National 14, LLC, prior to its cancellation;
- the Kelleys were and are the sole owners Attorney Trust Services, Inc.;
- the Kelleys control the education foundation and Mr. Kelley controls and the campaign organization, but they do not have an "ownership interest" in them.

In truth and in fact, as TROY X. KELLEY well knew, Blackstone held a 1% ownership

interest, and Wellington Trust, which for all practical purposes TROY X. KELLEY

controlled, held the remaining 99% interest, in Berkeley United, the entity that held the

Vanguard account into which TROY X. KELLEY had moved Old Republic's funds.

78.    Interrogatory 16 required TROY X. KELLEY to disclose all entities in

which he was an officer. On March 25, 2010, TROY X. KELLEY responded to this

interrogatory, stating:

Mr. Kelley has formed the following entities, . . . :

Blackstone International Inc. 2000 – present. (President)
United National LLC, 2002-2008, cancelled. (President)
United National 14 LLC, 2004-2008, cancelled. (President)
Attorney Trustee Services Inc, 2003-present. (President)
Kelley Education Foundation, 2007-present, very small, give money for education or internships (Chairman)

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1                 Friends of Troy Kelley, political association for campaign, 2006-present
2                 (Candidate)

3  In truth and in fact, as TROY X. KELLEY well knew, TROY X. KELLEY also was the

4  President of Berkeley United, the entity that held the Vanguard account into which

5  TROY X. KELLEY had moved Old Republic's funds.

6       79.    Interrogatory 18 required TROY X. KELLEY to disclose all bank accounts

7  into which he had "deposited any money originally received from Old Republic." On

8  March 25, 2010, TROY X. KELLEY responded to this interrogatory, stating "[t]he only

9  account used for the deposit of checks from ORT was #[******]1629 at Columbia Bank.

10  The account was in the name of United National, LLC; dba Post Closing Department."

11  On July 26, 2010, TROY X. KELLEY supplemented his Response to Interrogatory 18, as

12  follows:

13              RESPONSE:  As noted above, the only account used for the
14              deposit of checks was Account No. [******]1629 at
                Columbia Bank. From time to time, as reflected in the
15              Columbia bank records, United National would transfer funds
                representing service fees from this account to Account No.
16              [******]5529 at Columbia Bank.
17
               In addition, as also reflected in the Columbia Bank records, at
18              the conclusion of United National's reconveyance work for
19              Old Republic, United National transferred the remaining
                funds in Account No. [******]1629 to Wells Fargo Account
20              No. [***-***]3310, another business account held by United
21              National. At that point, the funds were commingled with
22              other funds that United National had received from other
                business operations, including other reconveyance business.
23

24  In truth and in fact, as TROY X. KELLEY well knew, Berkeley United held a Vanguard

25  account into which TROY X. KELLEY had transferred funds entrusted to Old Republic

26  and then delivered to Post Closing Department pursuant to borrowers' escrow

27  instructions. By his response to Interrogatory 18, TROY X. KELLEY sought to conceal

28  that bank account.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 24

1        80.    On August 2, 2010, TROY X. KELLEY was deposed in *Old Republic Title,*

2 *Ltd. v. Troy Kelley et al.* During the deposition, counsel for Old Republic directly

3 confronted TROY X. KELLEY about the funds TROY X. KELLEY had concealed in the

4 Vanguard account he had opened in the name of Berkeley United, inquiring "[w]hy were

5 the funds transferred to Berkeley United?" On January 28, 2011, TROY X. KELLEY

6 supplemented his prior interrogatory responses, admitting both that he had transferred

7 Old Republic's funds to a Vanguard account held by Berkeley United, and that he was

8 the President of Berkeley United.

9        81.    During that same deposition, TROY X. KELLEY also provided false

10 testimony concerning other matters. Thus, TROY X. KELLEY falsely testified that he

11 had negotiated the right to charge Old Republic additional fees beyond the $20 fee per

12 transaction. TROY X. KELLEY falsely testified that Post Closing Department's

13 spreadsheets identified and broke down the amounts of these individual fees for each

14 transaction. And TROY X. KELLEY falsely testified that he did not send the letter to

15 F.C. after the class action lawsuits were filed, or ask anyone to do so.

16        82.    During that same deposition, TROY X. KELLEY also testified that, after

17 shuttering Post Closing Department, he had performed a final reconciliation of all of the

18 work done by Post Closing Department for each of its escrow clients. TROY X.

19 KELLEY further testified that Post Closing Department was entitled to keep the money

20 in the Berkeley United account as "fees earned" for "services provided." TROY X.

21 KELLEY also testified that he had not paid tax on this money because, although Post

22 Closing Department had "earned" the money, the income had not yet been "realized."

23 **VI.   Continuation of the Tax Fraud Scheme**

24        83.    On May 3, 2011, Old Republic and TROY X. KELLEY settled *Old*

25 *Republic Title, Ltd. v. Troy Kelley et al.* Following the settlement TROY X. KELLEY

26 paid Old Republic $1,050,000 drawn from the money in the Berkeley United account at

27 Vanguard, in order that Old Republic could refund the money to borrowers.

28

1    84.    After he settled *Old Republic Title, Ltd. v. Troy Kelley et al.*, TROY X.

2    KELLEY maintained approximately $2,581,653 of the funds he had concealed during

3    June 2008 in the Berkeley United account at Vanguard. Beginning in 2011, TROY X.

4    KELLEY transferred $245,000 per year to accounts he controlled, which he then reported

5    as income on Forms 1120S he filed on behalf of Blackstone. TROY X. KELLEY sought

6    to evade the full taxes due and owing on the reported income, however, by fraudulently

7    deducting various items as business expenses, knowing full well that the deductions were

8    not for legitimate business expenses.

9    85.    On or about June 3, 2011, a month after the settlement in *Old Republic

10   Title, Ltd. v. Troy Kelley et al.*, TROY X. KELLEY wired $245,030 from the Berkeley

11   United account at Vanguard to a Berkeley United account at Wells Fargo Bank. On June

12   7, 2011, TROY X. KELLEY issued a check on the Wells Fargo Berkeley United account,

13   in the amount of $245,000, to Blackstone. TROY X. KELLEY deposited the check into

14   an account at Columbia Bank in the name of Blackstone.

15   86.    On or about February 28, 2012, TROY X. KELLEY filed a Form 1120S for

16   Blackstone for the tax year 2011. That form stated that Blackstone's business was

17   "[i]nformation [s]ervices," and described its product or service as "[d]ocument

18   [t]racking." TROY X. KELLEY declared that the company made gross profits of

19   $245,000 for tax year 2011. Blackstone's declared income for 2011, however, was offset

20   by business expense deductions that totaled $66,147.

21   87.    According to an attached Form 4562 Depreciation and Amortization,

22   approximately $28,535.32 of the declared deductions consisted of depreciation of two

23   vehicles, including a new vehicle purchased in 2011. TROY X. KELLEY indicated in

24   Form 4562 that both vehicles were used 100% for the business. The remaining business

25   deductions were itemized in a personally-prepared schedule entitled "Profit & Loss

26   Statement," and appended to Blackstone's return. The schedule noted, for example,

27   $5,162.21 in fuel expenses, $8,830.40 in business travel, $3,065.48 in conference

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 26

1  education expenses, $7,402.12 in sales expenses, and $2,974.35 for subscriptions and

2  books.

3      88.    In truth and fact, as TROY X. KELLEY well knew, many of the expenses

4  that TROY X. KELLEY declared as business deductions on Blackstone's Form 1120S

5  were personal expenses, and the expenses were not expenses associated with any

6  business that Blackstone had engaged in during the tax year 2011.

7      89.    On about January 6, 2012, TROY X. KELLEY issued a check on the

8  Berkeley United account at Vanguard, in the amount of $245,000, to Blackstone, which

9  he deposited into Blackstone's account at Columbia Bank. On about February 1, 2012,

10  TROY X. KELLEY transferred the remaining $2,090,818 in the Berkeley United account

11  at Vanguard to an account at Vanguard in the name of Blackstone.

12      90.    On or about February 2, 2013, TROY X. KELLEY filed a Form 1120S on

13  behalf of Blackstone for the tax year 2012, in which he declared gross profits of

14  $245,000, for Blackstone. As with the previous year's form, that form stated that

15  Blackstone's business was "[i]nformation [s]ervices," and described its product or service

16  as "[d]ocument [t]racking." Blackstone's declared income in 2012 was offset by

17  business-expense deductions totaling $60,425.

18      91.    Attached to the 2012 Form 1120S was a personally-prepared schedule

19  itemizing the various categories of claimed business expenses. The schedule noted,

20  among other things, $5,953.85 in fuel costs, $12,573.81 in business travel, $4,979.40 in a

21  category entitled "conference education," $9,975.04 in sales expenses, and $6,270 in

22  depreciation for a vehicle. On an attached Form 4562, which detailed the depreciated

23  vehicle, TROY X. KELLEY noted that the vehicle claimed was used 100% for business

24  and that the vehicle had been driven 15,000 miles during that year.

25      92.    In truth and fact, as TROY X. KELLEY well knew, many of the expenses

26  that TROY X. KELLEY declared as business deductions on Blackstone's Form 1120S

27  were personal or campaign-related expenses, and at least approximately $57,273 were not

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | expenses associated with any business that Blackstone had engaged in during the tax year
2 | 2012.

3 |     93.     On April 19, 2013, at Olympia, IRS Criminal Investigation ("IRS-
4 | CI") Special Agents interviewed TROY X. KELLEY. During the interview, TROY X.
5 | KELLEY was asked to explain his tax treatment of the reconveyance fees that TROY X.
6 | KELLEY had consolidated in 2008, but did not declare as income on his 2006 to 2008
7 | income tax returns. TROY X. KELLEY stated that his company was earning the
8 | $245,000 he was transferring to Blackstone each year by continuing to perform work on
9 | old reconveyance files.

10 |     94.     The statements and representations were false because, as TROY X.
11 | KELLEY then and there knew, TROY X. KELLEY and Blackstone were not tracking
12 | reconveyance transactions. Post Closing Department had terminated the employees who
13 | previously had performed the work. In addition, TROY X. KELLEY previously had
14 | testified under oath that Post Closing Department's files had been destroyed in a fire at
15 | Stewart Title's office on June 25, 2008, and in the subsequent crash of TROY X.
16 | KELLEY's computer.

17 |     95.     On or about February 27, 2014, TROY X. KELLEY filed a Form 1120S on
18 | behalf of Blackstone for the tax year 2013, in which he declared gross profits of
19 | $245,000, the same amount that TROY X. KELLEY had declared on the forms for the
20 | previous two years. Although the form declared $72,446 of business expenses, the
21 | principal such expense was legal fees, which totaled $57,945. Unlike the forms for the
22 | previous two years, the form did not declare any depreciation for vehicles. In addition, it
23 | declared substantially-lower amounts of expenses for items such as business travel, and
24 | subscriptions and books.

25 | **VII.    TROY X. KELLEY Continues to Conceal and Disguise his Illicit Proceeds**

26 |     96.     In 2006, TROY X. KELLEY was elected to the Washington House of
27 | Representatives. TROY X. KELLEY served three two-year terms in that body. In 2012,

28 |

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 │ TROY X. KELLEY campaigned for, and was elected, Washington State Auditor, a
2 │ position that he currently holds.

3 │     97.    In 2011, after he had funneled the proceeds of his fraudulent business, Post
4 │ Closing Department, through multiple companies and accounts, and after settlement of
5 │ the litigation brought by Old Republic, TROY X. KELLEY sought to begin spending for
6 │ his own benefit the remainder of the proceeds in a manner that would conceal and
7 │ disguise the nature, location, source, ownership, and control of the funds.

8 │     98.    As an elected public official, and as a candidate for office, TROY X.
9 │ KELLEY knew that the source of his income and wealth likely would be subject to
10 │ additional scrutiny. TROY X. KELLEY was required to file, at regular intervals,
11 │ financial disclosure forms with the Washington State Public Disclosure Commission,
12 │ including a Form F-1, Personal Financial Affairs Statement, or a short-form version of
13 │ that form (collectively, "F-1 Reports"). F-1 Reports detail a candidate/official's sources
14 │ of income, investments, and ownership interest in companies. F-1 Reports are signed and
15 │ submitted by the candidate/official under penalty of perjury, and are publicly-available
16 │ through the Washington State Public Disclosure Commission. Starting with his first F-1
17 │ Report, filed in 2005, TROY X. KELLEY described Blackstone as a legitimate "holding
18 │ company" or "company holding investments."

19 │     99.    TROY X. KELLEY sought to conceal from the victims of his fraud, the
20 │ government, including the IRS, and the general public, facts relating to his misconduct at
21 │ Post Closing Department, and, specifically, the fact that a substantial portion of his
22 │ income and assets derived from his fraudulent conduct. For example, after settling Old
23 │ Republic's lawsuit against him, TROY X. KELLEY sought unsuccessfully to seal court
24 │ records in the case.

25 │     100.    Rather than pay himself directly the remaining fraud proceeds, beginning in
26 │ 2011, TROY X. KELLEY withdrew $245,000 annually from the remaining fraud
27 │ proceeds that he held first in the Vanguard account in the name of Berkeley United, and
28 │

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 29

1  then in the Vanguard account in the name of Blackstone, and funneled the withdrawn

2  funds through another account held in the name of Blackstone.

3      101.   By making annual payments through Blackstone, which TROY X.

4  KELLEY portrayed as a legitimate company, TROY X. KELLEY concealed and

5  disguised and attempted to conceal and disguise the nature, location, source, ownership,

6  and control of the fraud proceeds by making his withdrawals appear as if they were

7  legitimately-earned income of a business that had been operating for many years, rather

8  than derived from his illicit activities at Post Closing Department.

9      102.   In each of 2013, 2014, and 2015, TROY X. KELLEY withdrew an

10  additional $245,000 from the Blackstone account at Vanguard.  As a result, by February

11  27, 2015, the balance on the account had been reduced to $1,355,843.

12      103.   On March 26, 2015, notwithstanding the fact that he had told IRS-CI agents

13  that he still was performing work to earn this money, TROY X. KELLEY wrote two

14  checks on the account -- which he previously had described as an impound account that

15  held moneys that he had not earned -- that reduced the balance in the account to zero.

16  First, TROY X. KELLEY wrote a check to the United States Treasury for $447,421.  On

17  the memo line of that check, TROY X. KELLEY wrote "Form 1040 2016-2020."

18  Second, TROY X. KELLEY wrote a check in the amount of $908,397 to a trust account

19  in Seattle in which the funds were to be held for his benefit.

20

21                        **COUNT 1**
                **(Possession and Concealment of Stolen Property)**

22

23      104.   The allegations set forth in Paragraphs 1 through 103 of this Superseding

24  Indictment are re-alleged and incorporated as if fully set forth herein.

25      105.   From in or about June 2008, to in or about January 2012, at Tacoma, in the

26  Western District of Washington, and elsewhere, TROY X. KELLEY did possess and

27  conceal stolen property, knowing the same to have been stolen, unlawfully converted,

28  and taken, namely, money of a value of $5,000 or more, which money had crossed a State

boundary after being stolen, unlawfully converted, and taken, to wit, funds that were

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 30

taken by fraud from Fidelity National Title and borrowers between January 2006 and March 2008, taken by fraud from Old Republic Title and borrowers between June 2006 and June 2008, and stolen by TROY X. KELLEY between January 2006 and June 2008, and that subsequently were transferred to an account in the name of Blackstone International, Inc., at Nevada State Bank, in the State of Nevada, and further transferred to an account in the name of Berkeley United, LLC, at Vanguard, in the State of Pennsylvania.

All in violation of Title 18, United States Code, Section 2315.

## COUNT 2
### (False Declaration)

106.    The allegations set forth in Paragraphs 1 through 12, 14 through 94, and 102 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

107.    On or about August 2, 2010, at Seattle, in the Western District of Washington, TROY X. KELLEY, while under oath and testifying in a civil deposition, knowingly did make a false material declaration in a proceeding before and ancillary to a court of the United States.

108.    On December 10, 2009, Old Republic Title filed a civil lawsuit in King County Superior Court, which was removed to the United States District Court for the Western District of Washington, *Old Republic Title, Ltd v. Troy Kelley, et al.*, C10-0038JLR, on January 6, 2010. The lawsuit included allegations that, pursuant to TROY X. KELLEY's agreement with Old Republic Title, TROY X. KELLEY and Post Closing Department were obligated to return unused reconveyance-processing fees to borrowers, but did not do so. Among other things, the lawsuit alleged that this failure constituted a breach of contract and unjust enrichment. Accordingly, at the time and place of aforesaid deposition, it was material whether, during a previous class action lawsuit in relation to an agreement similar to the one TROY X. KELLEY entered into with Old Republic Title, TROY X. KELLEY, after the class action lawsuit was filed,

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 31

1  acknowledged that he was obligated to pay refunds to borrowers by sending the lead

2  plaintiff, F.C., a $250 refund under cover of a letter acknowledging Post Closing

3  Department's obligation to pay the refund.

4      109.  At the time and place alleged, TROY X. KELLEY appearing as a witness

5  under oath during a deposition, knowingly made the following declarations in response to

6  questions with respect to the material matter alleged, as follows:

7

8          Question:    But you're denying that you sent this letter?

9          Answer:    Yes.

10          Question:    Or denying a recollection of it?

11

12          Answer:    Yes.

13          Question:    Which –

14          Answer:    I don't remember this at all.

15          Question:    You think it's likely that you sent it?

16

17          Answer:    No.

18          Question:    Think it's most likely that you did not?

19          Answer:    Yes.

20      110.  The answer given by TROY X. KELLEY to the next-to-last question, as he

21  then and there well knew and believed, was false in that, as he was well aware, TROY X.

22  KELLEY personally wrote the letter and caused the letter to be written, purchased the

23  check made payable to F.C. for $250, and sent the letter to F.C.

24      All in violation of Title 18, United States Code, Section 1623(a).

25

26

27

28

**COUNT 3**
**(False Declaration)**

111.    The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

112.    On or about April 8, 2011, at Olympia and Seattle, in the Western District of Washington, TROY X. KELLEY, in a declaration under penalty of perjury as permitted under Title 28, United States Code, Section 1746, knowingly did make a false material declaration in a proceeding before and ancillary to a court of the United States.

113.    On December 10, 2009, Old Republic Title filed a civil lawsuit in King County Superior Court, which was removed to the United States District Court for the Western District of Washington, *Old Republic Title, Ltd v. Troy Kelley, et al.*, C10-0038JLR, on January 6, 2010. The lawsuit included allegations that, pursuant to TROY X. KELLEY's agreement with Old Republic Title, TROY X. KELLEY and Post Closing Department were obligated to return unused reconveyance-processing fees to borrowers, but did not do so. Among other things, the lawsuit alleged that this failure constituted a breach of contract and unjust enrichment.   Accordingly, it was material whether during a previous class action lawsuit, in relation to an agreement similar to the one TROY X. KELLEY entered into with Old Republic Title, TROY X. KELLEY, after the class action lawsuit was filed, acknowledged that he was obligated to pay refunds to borrowers by sending the lead plaintiff, F.C., a $250 refund under cover of a letter acknowledging Post Closing Department's obligation to pay the refund.

114.    At the time and place alleged, TROY X. KELLEY signed and filed with the court a declaration in which he knowingly made the following statement with respect to the material matter alleged:

> Old Republic has also submitted a copy of a letter from the *Cornelius* litigation in which someone tried to return money to the plaintiff in that case. As I testified at my deposition, I didn't send this letter, and I don't know who did.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 33

115.   The aforesaid statement of TROY X. KELLEY, as he then and there well knew and believed, was false in that, as he was well aware, TROY X. KELLEY personally wrote the letter and caused the letter to be written, purchased the check made payable to F.C. for $250, sent the letter to F.C., and knew who sent the letter to F.C.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 4
### (False Declaration)

116.   The allegations set forth in Paragraphs 1 through 12, 14 through 94, and 102 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

117.   On or about August 2, 2010, at Seattle, in the Western District of Washington, TROY X. KELLEY, while under oath and testifying in a civil deposition, knowingly did make a false material declaration in a proceeding before and ancillary to a court of the United States.

118.   On December 10, 2009, Old Republic Title filed a civil lawsuit in King County Superior Court, which was removed to the United States District Court for the Western District of Washington, *Old Republic Title, Ltd v. Troy Kelley, et al.*, C10-0038JLR, on January 6, 2010. The lawsuit included allegations that, pursuant to TROY X. KELLEY's agreement with Old Republic Title, TROY X. KELLEY and Post Closing Department were obligated to return unused reconveyance-processing fees to borrowers, but did not do so. Among other things, the lawsuit alleged that this failure constituted a breach of contract and unjust enrichment. Accordingly, at the time and place of aforesaid deposition, it was material whether any verbal amendments had been made which would allow Post Closing Department to charge more for reconveyance tracking than had been provided for in the written agreement.

119.   At the time and place alleged, TROY X. KELLEY appearing as a witness under oath during a deposition knowingly made the following declaration in response to questions with respect to the material matter alleged, as follows:

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 34

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | Question: | Who at Old Republic discussed or negotiated with you any of |
| 2 | | your charges beyond the $20 fee specified in the agreement |
| 3 | | with Old Republic? |
| 4 | Answer: | Carl [Lago]. |

120.   The aforesaid testimony of TROY X. KELLEY, as he then and there well knew and believed, was false in that Carl Lago never discussed or negotiated with TROY X. KELLEY the option of earning more than $20 per file.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 5
### (False Declaration)

121.   The allegations set forth in Paragraphs 1 through 12, 14 through 94, and 102 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

122.   On or about August 2, 2010, at Seattle, in the Western District of Washington, TROY X. KELLEY, while under oath and testifying in a civil deposition, knowingly did make a false material declaration in a proceeding before and ancillary to a court of the United States.

123.   On December 10, 2009, Old Republic Title filed a civil lawsuit in King County Superior Court, which was removed to the United States District Court for the Western District of Washington, *Old Republic Title, Ltd v. Troy Kelley, et al.*, C10-0038JLR, on January 6, 2010. The lawsuit included allegations that, pursuant to TROY X. KELLEY's agreement with Old Republic Title, TROY X. KELLEY and Post Closing Department were obligated to return unused reconveyance processing fees to borrowers, but did not do so. Among other things, the lawsuit alleged that this failure constituted a breach of contract and unjust enrichment.   It was TROY X. KELLEY's position that he had not returned unused reconveyance fees because the agreement he had entered with Old Republic Title had been verbally modified, providing that Post Closing Department could charge additional fees for every task it performed in relation to each file, and, as a

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 35

1   result, there were no unused reconveyance-processing fees. Accordingly, at the time and
2   place of aforesaid deposition, it was material whether Post Closing Department
3   employees kept records reflecting all of the tasks they performed on each file.

4        124. At the time and place alleged, TROY X. KELLEY appearing as a witness
5   under oath during a deposition knowingly made the following declarations in response to
6   questions with respect to the material matter alleged, as follows:

7        Question: So you had a log or spreadsheet? What word would you use?
8        Answer: I would use either word.
9        Question: And it would have a specific breakdown of each of these fees
10          and expenses on each transaction?
11       Answer: Correct.
12       Question: Would it identify who the – what the specific fee was paid to
13          PCD?
14       Answer: Correct.
15       Question: So for example, you mentioned a fee for contacting lenders.
16       Answer: Correct.
17       Question: Would it say what the fee was and that this particular fee was
18          charged to that escrow file and to contact the lender?
19       Answer: That's exactly how –
20       Question: It wouldn't just be "PCD fees $55" without indicating what?
21       Answer: No, there were separate columns for each different fee.

22       125. The answer given by TROY X. KELLEY to the last question, as he then
23  and there well knew and believed, was false in that, as he was well aware, TROY X.
24  KELLEY had entered into an agreement with Old Republic Title to track its
25  reconveyances for a flat fee of $20.00 per transaction tracked. Therefore, Post Closing
26  Department employees were not asked to, and did not, keep track of the individual tasks
27
28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

they performed on files. As a result, Post Closing Department's spreadsheets did not identify specific fees paid to Post Closing Department.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 6
### (Money Laundering)

126. The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

127. On or about June 7, 2011, at Tacoma, in the Western District of Washington, and elsewhere, TROY X. KELLEY, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit a check in the amount of $245,000 written on an account at Wells Fargo Bank in the name of Berkeley United, LLC, into an account at Columbia Bank in the name of Blackstone International, Inc., which involved the proceeds of a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 7
### (Money Laundering)

128. The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

129. On or about January 6, 2012, at Tacoma, in the Western District of Washington, and elsewhere, TROY X. KELLEY, did knowingly conduct and attempt to

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 37

1 │ conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit
2 │ a check in the amount of $245,000 written on an account at Vanguard in the name of
3 │ Berkeley United, LLC, into an account at Columbia Bank in the name of Blackstone
4 │ International, Inc., which involved the proceeds of a specified unlawful activity, that is,
5 │ mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud in
6 │ violation of Title 18, United States Code, Section 1343, knowing that the transaction was
7 │ designed in whole and in part to conceal and disguise the nature, location, source,
8 │ ownership, and control of the proceeds of specified unlawful activity, and while
9 │ conducting and attempting to conduct such financial transaction knew that the property
10 │ involved in the financial transaction represented the proceeds of some form of unlawful
11 │ activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 8
**(Money Laundering)**

130.     The allegations set forth in Paragraphs 1 through 103 of this Superseding
Indictment are re-alleged and incorporated as if fully set forth herein.

131.     On or about January 3, 2013, at Tacoma, in the Western District of
Washington, and elsewhere, TROY X. KELLEY, did knowingly conduct and attempt to
conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit
a check in the amount of $245,000 written on an account at Vanguard in the name of
Blackstone International, Inc., into an account at Columbia Bank in the name of
Blackstone International, Inc., which involved the proceeds of a specified unlawful
activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341,
and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that
the transaction was designed in whole and in part to conceal and disguise the nature,
location, source, ownership, and control of the proceeds of specified unlawful activity,
and while conducting and attempting to conduct such financial transaction knew that the

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  property involved in the financial transaction represented the proceeds of some form of

2  unlawful activity.

3     All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

4

5                           **COUNT 9**
                        **(Money Laundering)**
6

7     132.   The allegations set forth in Paragraphs 1 through 103 of this Superseding

8  Indictment are re-alleged and incorporated as if fully set forth herein.

9     133.   On or about January 24, 2014, at Tacoma, in the Western District of

10  Washington, and elsewhere, TROY X. KELLEY, did knowingly conduct and attempt to

11  conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit

12  a check in the amount of $245,000 written on an account at Vanguard in the name of

13  Blackstone International, Inc., into an account at Columbia Bank in the name of

14  Blackstone International, Inc., which involved the proceeds of a specified unlawful

15  activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341,

16  and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that

17  the transaction was designed in whole and in part to conceal and disguise the nature,

18  location, source, ownership, and control of the proceeds of specified unlawful activity,

19  and while conducting and attempting to conduct such financial transaction knew that the

20  property involved in the financial transaction represented the proceeds of some form of

21  unlawful activity.

22     All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

23

24                          **COUNT 10**
                        **(Money Laundering)**
25

26     134.   The allegations set forth in Paragraphs 1 through 103 of this Superseding

27  Indictment are re-alleged and incorporated as if fully set forth herein.

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 39

135.   On or about February 2, 2015, at Tacoma, in the Western District of Washington, and elsewhere, TROY X. KELLEY, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit by means of wire transfer $245,000 from an account at Vanguard in the name of Blackstone International, Inc., into an account at Columbia Bank in the name of Blackstone International, Inc., which involved the proceeds of a specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 11
**(Corrupt Interference with Internal Revenue Laws)**

136.   The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

137.   Beginning in or before 2007 and continuing until the present, at Tacoma and elsewhere, in the Western District of Washington, TROY X. KELLEY did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by failing to declare income that he had obtained by fraud and stolen in the years in which he obtained such income, by falsely declaring a portion of that income in later years in an attempt to make the income legitimate, by claiming fraudulent deductions to reduce his tax obligation on the portion of the income that he did declare, and by making false statements to Internal Revenue Service employees who interviewed him concerning the income.

138.   The Internal Revenue Service ("IRS") is an agency of the United States

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

within the Department of Treasury of the United States responsible for enforcing and administering the tax laws of the United States. The federal income tax system of the United States relies upon citizens to truthfully, accurately, and timely report income and expense information to the IRS.

139. Between 2006 and 2008, having fraudulently obtained and stolen funds from Fidelity National Title, Old Republic Title, and borrowers, TROY X. KELLEY fully realized that the title companies and borrowers might seek the return of their funds. Accordingly, TROY X. KELLEY sought to avoid payment of taxes on the fraudulently-obtained and stolen funds, at least until after any such action was resolved.

140. To do so, between 2006, and 2008, TROY X. KELLEY deliberately underreported on tax returns for the tax years 2006 through 2008, the income that United National earned and that flowed through to Blackstone and ATS, and then to TROY X. KELLEY's and D.D.K.'s tax returns. In total, TROY X. KELLEY failed to report a total of more than $3,000,000 of income on United's tax returns for 2006 through 2008. As a result, TROY X. KELLEY failed to report on his and D.D.K.'s joint tax returns, and to pay, a total of approximately $1,000,000 of taxes for those three years.

141. After failing to report Post Closing Department's true income on United National's tax returns for the years 2006 through 2008, TROY X. KELLEY kept that untaxed money in an account in the name of Berkeley United at Vanguard from 2008 through 2011. On May 3, 2011, TROY X. KELLEY settled the last remaining piece of litigation against him relating to the stolen reconveyance funds. Following that settlement, TROY X. KELLEY paid Old Republic $1,050,000 drawn from the Berkeley United account at Vanguard, so that Old Republic could refund the money to borrowers.

142. Beginning a month later, on June 3, 2011, TROY X. KELLEY transferred $245,000 per year of this money to accounts that he controlled. TROY X. KELLEY reported this amount as income on Blackstone tax returns for the years 2011 through at least 2013. TROY X. KELLEY offset the income by claiming fraudulent deductions for expenses that either were wholly fraudulent or that were for personal expenses, rather

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 41

than legitimate business expenses of Blackstone. TROY X. KELLEY claimed these fraudulent expenses both to reduce his tax obligation, and in an attempt to provide an appearance of legitimacy for Blackstone, which otherwise would have had substantial income but no reported expenses.

143.    TROY X. KELLEY claimed $66,147 in fraudulent business deductions on Blackstone's 2011 Form 1120S, and claimed $60,425 in business deductions, at least $57,273 of which were fraudulent, on Blackstone's 2012 Form 1120S. Because Blackstone's ordinary business income was reportable on TROY X. KELLEY's and D.D.K.'s joint personal tax return, TROY X. KELLEY thereby reduced his own taxable income for each of 2011 and 2012. The overall effect of the claimed expenses was to reduce TROY X. KELLEY's personal tax obligation by approximately $20,000 in each of 2011 and 2012.

144.    When TROY X. KELLEY was interviewed by Internal Revenue Service – Criminal Investigation Special Agents, on April 19, 2013, TROY X. KELLEY made false and fraudulent statements concerning his actions. In particular, TROY X. KELLEY falsely claimed that Blackstone was continuing to work on reconveyance files, and, thereby, had earned the $245,000 in income that it reported in each of 2011 and 2012.

All in violation of Title 26, United States Code, Section 7212(a).

## COUNT 12
### (Filing False Income Tax Return)

145.    The allegations set forth in Paragraphs 1 through 12, 14 through 94, and 102 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

146.    On or about October 9, 2008, at Seattle, in the Western District of Washington, TROY X. KELLEY, a resident of Tacoma, Washington, did willfully make and subscribe a US Return of Partnership Income, Form 1065, for United National, LLC for calendar year 2008, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 42

1  every material matter. That income tax return, which was filed with the Internal Revenue

2  Service, reported "gross receipts or sales" of $198,996, whereas, as TROY X. KELLEY

3  then and there well knew, United National LLC received additional gross receipts not

4  stated on the return, to wit, at least approximately $304,019 of additional gross receipts.

5      All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 13
### (Filing False Income Tax Return)

9      147.   The allegations set forth in Paragraphs 1 through 12, 14 through 94, and

10  102 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully

11  set forth herein.

12      148.   On or about March 31, 2009, at Tacoma, in the Western District of

13  Washington, TROY X. KELLEY, a resident of Tacoma, Washington, did willfully make

14  and subscribe a U.S. Individual Income Tax Return, Form 1040, for himself and his wife

15  D.D.K. for calendar year 2008, which was verified by a written declaration that it was

16  made under the penalties of perjury and which he did not believe to be true and correct as

17  to every material matter. That income tax return, which was filed with the Internal

18  Revenue Service, reported income from Blackstone International, Inc., and Attorney

19  Trustee Services, Inc., of $169,868 and total income of $322,659, whereas, as TROY X.

20  KELLEY then and there well knew, he and D.D.K. had income from Blackstone

21  International, Inc., and Attorney Trustee Services, Inc., in addition to the amount stated

22  on the return, to wit, additional income of at least approximately $292,954.

23      All in violation of Title 26, United States Code, Section 7206(1).

## COUNT 14
### (Filing False Income Tax Return)

26      149.   The allegations set forth in Paragraphs 1 through 103 of this Superseding

27  Indictment are re-alleged and incorporated as if fully set forth herein.

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 43

1    150.    On or about February 28, 2012, at Tacoma, in the Western District of

2  Washington, TROY X. KELLEY, a resident of Tacoma, Washington, did willfully make

3  and subscribe a U.S. Income Tax Return for an S Corporation, Form 1120S, for

4  Blackstone International, Inc., for calendar year 2011, which was verified by a written

5  declaration that it was made under the penalties of perjury and which he did not believe

6  to be true and correct as to every material matter.  That income tax return, which was

7  filed with the Internal Revenue Service, reported gross profits of $245,000 and reported

8  business expenses of $66,147 as deductions, whereas, as TROY X. KELLEY then and

9  there well knew, Blackstone International did not have the gross profits declared and had

10  not incurred all of the expenses pursuant to any business it had conducted during 2011.

11    All in violation of Title 26, United States Code, Section 7206(1).

12

13  ## COUNT 15
    ### (Filing False Income Tax Return)

14

15    151.    The allegations set forth in Paragraphs 1 through 103 of this Superseding

16  Indictment are re-alleged and incorporated as if fully set forth herein.

17    152.    On or about February 2, 2013, at Tacoma, in the Western District of

18  Washington, TROY X. KELLEY, a resident of Tacoma, Washington, did willfully make

19  and subscribe a U.S. Income Tax Return for an S Corporation, Form 1120S, for

20  Blackstone International, Inc., for calendar year 2012, which was verified by a written

21  declaration that it was made under the penalties of perjury and which he did not believe

22  to be true and correct as to every material matter.  That income tax return, which was

23  filed with the Internal Revenue Service, reported gross receipts of $245,000 and reported

24  business expenses of $60,425, as deductions, whereas, as TROY X. KELLEY then and

25  there well knew, Blackstone International, Inc., did not have the gross receipts declared

26  and had not incurred $57,273 of the expenses pursuant to any business it had conducted

27  during 2012.

28    All in violation of Title 26, United States Code, Section 7206(1).

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**COUNT 16**
**(False Statements)**

153.     The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

154.     On or about April 19, 2013, at Olympia, within the Western District of Washington, TROY X. KELLEY did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by informing Internal Revenue Service – Criminal Investigation Special Agents during an interview that, Blackstone International earned the $245,000 he transferred to Blackstone International, Inc., in each of 2011 and 2012, by continuing to perform work on reconveyance files. The statements and representations were false because, as TROY X. KELLEY then and there knew, TROY X. KELLEY and Blackstone International, Inc., were not performing any significant work tracking reconveyance transactions in 2011 and 2012.

All in violation of Title 18, United States Code, Section 1001.

**COUNT 17**
**(Filing False Income Tax Return)**

155.     The allegations set forth in Paragraphs 1 through 103 of this Superseding Indictment are re-alleged and incorporated as if fully set forth herein.

156.     On or about February 27, 2014, at Tacoma, in the Western District of Washington, TROY X. KELLEY, a resident of Tacoma, Washington, did willfully make and subscribe a U.S. Income Tax Return for an S Corporation, Form 1120S, for Blackstone International, Inc., for calendar year 2013, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That income tax return, which was filed with the Internal Revenue Service, reported gross receipts of $245,000, whereas, as

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 45

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  TROY X. KELLEY then and there well knew, Blackstone International, Inc., did not

2  have the gross receipts declared during 2013.

3      All in violation of Title 26, United States Code, Section 7206(1).

4

5  **<u>FORFEITURE ALLEGATION</u>**

6      157.   The allegations contained in Count 1 of this Superseding Indictment are

7  hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture

8  pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

9  Code, Section 2461(c).

10      158.   Upon conviction of the offense of Possession and Concealment of Stolen

11  Property in violation of Title 18, United States Code, Section 2315, set forth in Count 1

12  above, TROY X. KELLEY shall forfeit to the United States, pursuant to Title 18, United

13  States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all

14  property, real or personal, that constitutes or is derived from proceeds traceable to such

15  offense, including but not limited to the following property:

16          a.   Money Judgment.  A sum of money equal to approximately

17             $1,463,171, representing the amount of proceeds obtained as a result

18             of the offense set forth in Count 1, above.

19      159.   The allegations contained in Counts 6 through 10 of this Superseding

20  Indictment are hereby re-alleged and incorporated by reference for the purpose of

21  alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).  Upon

22  conviction of an offense in violation of Title 18, United States Code, Section 1956, the

23  defendant, TROY X. KELLEY, shall forfeit to the United States of America any

24  property, real or personal, involved in such offense, and any property traceable to such

25  property pursuant to Title 18, United States Code, Section 982(a)(1).  The property to be

26  forfeited includes, but is not limited to, the following:

27          a.   The sum of $908,397.51 in United States funds, contained in Bank

28             of America account No. XXXXXXXX3414, that was transferred

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

from Vanguard Prime Money Market Fund Account XXXX6680, held in the name of Blackstone International, Inc., on March 26, 2015.

    b.    The sum of $447,421.00 in United States funds that was transferred from Vanguard Prime Money Market Fund Account XXXX6680, held in the name of Blackstone International, Inc., on March 26, 2015.

160.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

//

//

//

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  the United States of America shall be entitled to forfeiture of substitute property pursuant

2  to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States

3  Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

4                                              A TRUE BILL:

5                                              DATED: 9/03/2015

6                                              Signature of Foreperson redacted pursuant
                                               to the policy of the Judicial Conference of the
7                                              United States

8

9                                              FOREPERSON

10

11  ANNETTE L. HAYES
    United States Attorney
12

13

14  ANDREW C. FRIEDMAN
    Assistant United States Attorney
15

16

17  KATHERYN K. FRIERSON
    Assistant United States Attorney
18

19

20  ARLEN R. STORM
    Assistant United States Attorney
21

22

23

24

25

26

27

28

SUPERSEDING INDICTMENT/KELLEY (No. CR15-5198RBL) - 48

# EXHIBIT B

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| Richard L. Pope, Jr. | NO. 15-2-21926-0 SEA |
|---|---|
| VS | |
| TROY X. KELLEY, DIANE D. KELLEY, | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(TTO) -** TORT, OTHER (MSC 2)

AREA DESIGNATION

**SEATTLE -** Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Richard L. Pope, Jr. | NO.    15-2-21926-0 SEA |
| Plaintiff(s), | ORDER SETTING CIVIL CASE SCHEDULE |
| vs. | |
| | ASSIGNED JUDGE:  Bradshaw, Timothy A., Dept. 1 |
| TROY X. KELLEY, DIANE D. KELLEY, UNITED NATIONAL, LLC, and BLACKSTONE INTERNATIONAL, INC. | FILED DATE:  9/8/2015 |
| | TRIAL DATE:  9/6/2016 |
| Respondent(s) | SCOMIS CODE:  *ORSCS |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the **Summons and Complaint/Petition**. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**"I understand that I am required to give a copy of these documents to all parties in this case."**

| | |
|---|---|
| PRINT NAME | SIGN NAME |

## I. NOTICES  (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| √ | CASE EVENTS | DATE |
|---|---|---|
| | Case Filed and Schedule Issued. | 9/8/2015 |
| √ | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR2.1(a) and Notices on page 2]. **$220 Arbitration fee must be paid** | 2/16/2016 |
| √ | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [See KCLCR 4.2(a) and Notices on page 2] | 2/16/2016 |
| | **DEADLINE** for Hearing Motions to Change Case Assignment Area [KCLCR 82(e)] | 3/1/2016 |
| | **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)] | 4/5/2016 |
| | **DEADLINE** for Disclosure of Possible Additional Witnesses [KCLCR 26(b)] | 5/17/2016 |
| | **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)] | 5/31/2016 |
| | **DEADLINE** for Change in Trial Date [See KCLCR 40(e)(2)] | 5/31/2016 |
| | **DEADLINE** for Discovery Cutoff [See KCKCR 37(g)] | 7/19/2016 |
| | **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR16(b)] | 8/9/2016 |
| | **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)] | 8/16/2016 |
| √ | **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(1)] | 8/16/2016 |
| | **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56;CR56] | 8/23/2016 |
| √ | Joint Statement of Evidence [See KCLCR 4(k)] | 8/30/2016 |
| | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusion of Law with the Clerk) | 8/30/2016 |
| | Trial Date [See KCLCR 40] | 9/6/2016 |

The √ indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED: ___9/8/2015___          _____

                                                PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**
### A. Joint Confirmation regarding Trial Readiness Report:
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

**The form is** available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:**  Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Court website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

## MOTIONS PROCEDURES
### A. Noting of Motions
**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:** Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

**B. Original Documents/Working Copies/ Filing of Documents: All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents:** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for non-dispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

*Susan J. Craighead*
**PRESIDING JUDGE**

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

1

2

3

4

5

6

7

8                   **SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

9

10   RICHARD L. POPE, JR., individually          )      NO. _____
     and on behalf of all others similarly situated,  )
11                                                )
     Plaintiff,                                   )
12                                                )
     v.                                           )
13                                                )
     TROY X. KELLEY, DIANE D. KELLEY,             )      SUMMONS (20/60 DAYS)
14   and the marital community comprised thereof, )
     UNITED NATIONAL, LLC, and                    )
15   BLACKSTONE INTERNATIONAL, INC.,              )
                                                  )
16   Defendants.                                  )
     _____)

17

18   TO THE DEFENDANTS, TROY X. KELLEY, DIANE D. KELLEY, and the marital

19   community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE

20   INTERNATIONAL, INC.:

21        A lawsuit has been started against you in the above entitled court by RICHARD L. POPE,

22   JR., Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon

23   you with this Summons.

24        In order to defend against this lawsuit, you must respond to the complaint by stating your

25   defense in writing, and serve a copy upon the person signing this summons within 20 days after

26   the service of this summons, excluding the day of service, or a default judgment may be entered

27   against you without notice.  A default judgment is one where plaintiff is entitled to what he asks

28
**SUMMONS (20/60 DAYS) – 1**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1   for because you have not responded. If you serve a notice of appearance on the undersigned

2   person you are entitled to notice before a default judgment may be entered.

3        You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4   demand must be in writing and must be served upon the person signing this summons. Within 14

5   days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service

6   on you of this summons and complaint will be void.

7        If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8   that your written response, if any, may be served on time.

9        This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

10  of Washington.

11

12

13  Dated: September 8, 2015          Signed:   /s/ Richard L. Pope, Jr.
                                                RICHARD L. POPE, JR.
14                                              WSBA # 21118
                                                Attorney for Plaintiff
15
                                                Lake Hills Legal Services P.C.
16                                              15600 N.E. 8th Street, Suite B1-358
                                                Bellevue, Washington  98008
17                                              Tel:  (425) 829-5305
                                                Fax:  (425) 526-5714
18                                              E-Mail:  rp98007@gmail.com

19                                              SERVE A COPY OF YOUR ANSWER
                                                ON PLAINTIFF'S ATTORNEY:
20
                                                RICHARD L. POPE, JR.
21                                              Lake Hills Legal Services P.C.
                                                15600 N.E. 8th Street, Suite B1-358
22                                              Bellevue, Washington  98008
                                                Tel:  (425) 829-5305
23                                              Fax:  (425) 526-5714
                                                E-Mail:  rp98007@gmail.com
24

25

26

27

28
     **SUMMONS (20/60 DAYS) – 2**

**FILED**

15 DEC 07 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

# Superior Court of Washington
# County of King

In re:

RICHARD L. POPE, JR., individually and on
behalf of all others similarly situated,

                              Plaintiff,

and
TROY X. KELLEY, DIANE D. KELLEY, and
the marital community comprised thereof,
UNITED NATIONAL, LLC, and
BLACKSTONE INTERNATIONAL, INC.,

                            Defendants.

**No. 15-2-21926-0SEA**

**Return of Service
(Optional Use)
(RTS)**

## I Declare:

1.    I am over the age of 18 years, and I am not a party to this action.

2.    I served a copy of the following documents to BLACKSTONE INTERNATIONAL, INC.:

       [X]    Summons, a copy of which is attached
       [X]    Complaint for Damages
       [X]    Case Information Cover Sheet and Area Designation
       [X]    Order Setting Civil Case Schedule

3.    The date, time and place of service were (if by mail refer to Paragraph 4 below):

      Date:      Sunday, December 6, 2015      Time: 6:44 p.m.

      Address:   2521 Fremont Street
                   Tacoma, Washington 98406

4.    Service was made:

    [X]    by delivery of a copy of the above listed documents to TROY X. KELLEY, the President, Secretary and Treasurer of the Defendant corporation.

5.    Other:

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at Bellevue, Washington on December 6, 2015.

_____    LANA WILKINSON_____
Signature                              Print or Type Name

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

1

2

3

4

5

6

7

8     **SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

9

10    RICHARD L. POPE, JR., individually          )        NO. _____
      and on behalf of all others similarly situated,   )
                                                   )
11    Plaintiff,                                   )
                                                   )
12    v.                                           )
                                                   )
13    TROY X. KELLEY, DIANE D. KELLEY,             )        SUMMONS (20/60 DAYS)
      and the marital community comprised thereof, )
14    UNITED NATIONAL, LLC, and                    )
      BLACKSTONE INTERNATIONAL, INC.,              )
15                                                 )
      Defendants.                                  )
16    _____       )

17

18    TO THE DEFENDANTS, TROY X. KELLEY, DIANE D. KELLEY, and the marital

19    community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE

20    INTERNATIONAL, INC.:

21         A lawsuit has been started against you in the above entitled court by RICHARD L. POPE,

22    JR., Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon

23    you with this Summons.

24         In order to defend against this lawsuit, you must respond to the complaint by stating your

25    defense in writing, and serve a copy upon the person signing this summons within 20 days after

26    the service of this summons, excluding the day of service, or a default judgment may be entered

27    against you without notice.  A default judgment is one where plaintiff is entitled to what he asks

28

**SUMMONS (20/60 DAYS) – 1**

1    for because you have not responded. If you serve a notice of appearance on the undersigned

2    person you are entitled to notice before a default judgment may be entered.

3          You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4    demand must be in writing and must be served upon the person signing this summons. Within 14

5    days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service

6    on you of this summons and complaint will be void.

7          If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8    that your written response, if any, may be served on time.

9          This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

10   of Washington.

11

12

13   Dated: September 8, 2015          Signed:   /s/ Richard L. Pope, Jr._____
                                                 RICHARD L. POPE, JR.
14                                               WSBA # 21118
                                                 Attorney for Plaintiff
15
                                                 Lake Hills Legal Services P.C.
16                                               15600 N.E. 8th Street, Suite B1-358
                                                 Bellevue, Washington  98008
17                                               Tel:  (425) 829-5305
                                                 Fax:  (425) 526-5714
18                                               E-Mail:  rp98007@gmail.com

19                                               SERVE A COPY OF YOUR ANSWER
                                                 ON PLAINTIFF'S ATTORNEY:
20
                                                 RICHARD L. POPE, JR.
21                                               Lake Hills Legal Services P.C.
                                                 15600 N.E. 8th Street, Suite B1-358
22                                               Bellevue, Washington  98008
                                                 Tel:  (425) 829-5305
23                                               Fax:  (425) 526-5714
                                                 E-Mail:  rp98007@gmail.com
24

25

26

27

28
     **SUMMONS (20/60 DAYS) – 2**

**FILED**

15 DEC 07 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

# Superior Court of Washington
# County of King

In re:

RICHARD L. POPE, JR., individually and on
behalf of all others similarly situated,

                                    Plaintiff,

and

TROY X. KELLEY, DIANE D. KELLEY, and
the marital community comprised thereof,
UNITED NATIONAL, LLC, and
BLACKSTONE INTERNATIONAL, INC.,

                                    Defendants.

**No.  15-2-21926-0SEA**

**Return of Service
(Optional Use)
(RTS)**

## I Declare:

1.      I am over the age of 18 years, and I am not a party to this action.

2.      I served a copy of the following documents to DIANE D. KELLEY:

        [X]     Summons, a copy of which is attached
        [X]     Complaint for Damages
        [X]     Case Information Cover Sheet and Area Designation
        [X]     Order Setting Civil Case Schedule

3.      The date, time and place of service were (if by mail refer to Paragraph 4 below):

        Date:        Sunday, December 6, 2015         Time:  6:44 p.m.

        Address:     2521 Fremont Street
                     Tacoma, Washington  98406

*Return of Service (RTS) - Page 1 of 2*

4.    Service was made:

    [X]    by delivery of a copy of the above listed documents to TROY X. KELLEY, a person of suitable age and discretion residing at the Defendant's usual abode.

5.    Other:

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at Bellevue, Washington on December 6, 2015.

Signature

LANA WILKINSON

Print or Type Name

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

1
2
3
4
5
6
7

8            **SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

9

10   RICHARD L. POPE, JR., individually          )        NO. _____
     and on behalf of all others similarly situated,   )
11                                                 )
     Plaintiff,                                    )
12                                                 )
     v.                                            )
13                                                 )
     TROY X. KELLEY, DIANE D. KELLEY,              )        SUMMONS (20/60 DAYS)
     and the marital community comprised thereof,  )
14   UNITED NATIONAL, LLC, and                     )
     BLACKSTONE INTERNATIONAL, INC.,               )
15                                                 )
     Defendants.                                   )
16   _____)

17

18   TO THE DEFENDANTS, TROY X. KELLEY, DIANE D. KELLEY, and the marital

19   community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE

20   INTERNATIONAL, INC.:

21          A lawsuit has been started against you in the above entitled court by RICHARD L. POPE,

22   JR., Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon

23   you with this Summons.

24          In order to defend against this lawsuit, you must respond to the complaint by stating your

25   defense in writing, and serve a copy upon the person signing this summons within 20 days after

26   the service of this summons, excluding the day of service, or a default judgment may be entered

27   against you without notice.  A default judgment is one where plaintiff is entitled to what he asks

28
     **SUMMONS (20/60 DAYS) – 1**

1   for because you have not responded. If you serve a notice of appearance on the undersigned

2   person you are entitled to notice before a default judgment may be entered.

3          You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4   demand must be in writing and must be served upon the person signing this summons. Within 14

5   days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service

6   on you of this summons and complaint will be void.

7          If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8   that your written response, if any, may be served on time.

9          This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

10   of Washington.

11

12

13   Dated: September 8, 2015      Signed:   /s/ Richard L. Pope, Jr.

                                 RICHARD L. POPE, JR.

14                                    WSBA # 21118

                                   Attorney for Plaintiff

15

                                   Lake Hills Legal Services P.C.

16                                    15600 N.E. 8th Street, Suite B1-358

                                   Bellevue, Washington  98008

17                                    Tel: (425) 829-5305

                                   Fax: (425) 526-5714

18                                    E-Mail:  rp98007@gmail.com

19                                    SERVE A COPY OF YOUR ANSWER

                                   ON PLAINTIFF'S ATTORNEY:

20

21                                    RICHARD L. POPE, JR.

                                   Lake Hills Legal Services P.C.

22                                    15600 N.E. 8th Street, Suite B1-358

                                   Bellevue, Washington  98008

23                                    Tel: (425) 829-5305

                                   Fax: (425) 526-5714

24                                    E-Mail:  rp98007@gmail.com

25

26

27

28

**SUMMONS (20/60 DAYS) – 2**

**FILED**

15 DEC 07 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

# Superior Court of Washington
# County of King

In re:

RICHARD L. POPE, JR., individually and on
behalf of all others similarly situated,

                             Plaintiff,

and
TROY X. KELLEY, DIANE D. KELLEY, and
the marital community comprised thereof,
UNITED NATIONAL, LLC, and
BLACKSTONE INTERNATIONAL, INC.,

                           Defendants.

**No.  15-2-21926-0SEA**

**Return of Service
(Optional Use)
(RTS)**

## I Declare:

1.    I am over the age of 18 years, and I am not a party to this action.

2.    I served a copy of the following documents to TROY X. KELLEY:

        [X]    Summons, a copy of which is attached
        [X]    Complaint for Damages
        [X]    Case Information Cover Sheet and Area Designation
        [X]    Order Setting Civil Case Schedule

3.    The date, time and place of service were (if by mail refer to Paragraph 4 below):

    Date:        Sunday, December 6, 2015        Time:  6:44 p.m.

    Address:    2521 Fremont Street
                  Tacoma, Washington  98406

4.  Service was made:

    [X]    by delivery of a copy of the above listed documents to Defendant TROY X. KELLEY.

5.  Other:


I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at Bellevue, Washington on December 6, 2015.


_____          LANA WILKINSON_____
Signature                                 Print or Type Name

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| RICHARD L. POPE, JR., individually and on behalf of all others similarly situated, | ) ) ) | NO. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TROY X. KELLEY, DIANE D. KELLEY, and the marital community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE INTERNATIONAL, INC., | ) ) ) ) ) | SUMMONS (20/60 DAYS) |
| Defendants. | ) ) | |

TO THE DEFENDANTS, TROY X. KELLEY, DIANE D. KELLEY, and the marital

community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE

INTERNATIONAL, INC.:

A lawsuit has been started against you in the above entitled court by RICHARD L. POPE,

JR., Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon

you with this Summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your

defense in writing, and serve a copy upon the person signing this summons within 20 days after

the service of this summons, excluding the day of service, or a default judgment may be entered

against you without notice.  A default judgment is one where plaintiff is entitled to what he asks

**SUMMONS (20/60 DAYS) – 1**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1  for because you have not responded. If you serve a notice of appearance on the undersigned

2  person you are entitled to notice before a default judgment may be entered.

3       You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4  demand must be in writing and must be served upon the person signing this summons. Within 14

5  days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service

6  on you of this summons and complaint will be void.

7       If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8  that your written response, if any, may be served on time.

9       This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

10  of Washington.

11

12

13  Dated: September 8, 2015        Signed:   /s/ Richard L. Pope, Jr.
                                              RICHARD L. POPE, JR.
14                                            WSBA # 21118
                                              Attorney for Plaintiff
15
                                              Lake Hills Legal Services P.C.
16                                            15600 N.E. 8th Street, Suite B1-358
                                              Bellevue, Washington  98008
17                                            Tel:  (425) 829-5305
                                              Fax:  (425) 526-5714
18                                            E-Mail:  rp98007@gmail.com

19                                            SERVE A COPY OF YOUR ANSWER
                                              ON PLAINTIFF'S ATTORNEY:
20
                                              RICHARD L. POPE, JR.
21                                            Lake Hills Legal Services P.C.
                                              15600 N.E. 8th Street, Suite B1-358
22                                            Bellevue, Washington  98008
                                              Tel:  (425) 829-5305
23                                            Fax:  (425) 526-5714
                                              E-Mail:  rp98007@gmail.com
24

25

26

27

28
    **SUMMONS (20/60 DAYS) – 2**

**FILED**

15 DEC 07 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

# Superior Court of Washington
# County of King

|  |  |
|---|---|
| In re: | |
| RICHARD L. POPE, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>and<br>TROY X. KELLEY, DIANE D. KELLEY, and the marital community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE INTERNATIONAL, INC., Defendants. | **No. 15-2-21926-0SEA**<br><br>**Return of Service (Optional Use) (RTS)** |

## I Declare:

1.  I am over the age of 18 years, and I am not a party to this action.

2.  I served a copy of the following documents to UNITED NATIONAL, LLC:

    [X]   Summons, a copy of which is attached
    [X]   Complaint for Damages
    [X]   Case Information Cover Sheet and Area Designation
    [X]   Order Setting Civil Case Schedule

---

3.  The date, time and place of service were (if by mail refer to Paragraph 4 below):

    Date:      Sunday, December 6, 2015          Time: 6:44 p.m.

    Address:   2521 Fremont Street
               Tacoma, Washington 98406

---

4.   Service was made:

    [X]   by delivery of a copy of the above listed documents to TROY X. KELLEY, the
             Registered Agent and Member of the Defendant limited liability company.

5.   Other:

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at Bellevue, ~~Washington~~ on December 6, 2015.

Signature

LANA WILKINSON
Print or Type Name

FILED

15 SEP 08 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-21926-0 SEA

1
2
3
4
5
6
7

8          **SUPERIOR COURT OF WASHINGTON FOR KING COUNTY**

9

10   RICHARD L. POPE, JR., individually          )    NO. _____
     and on behalf of all others similarly situated,    )
                                                   )
11   Plaintiff,                                    )
                                                   )
12   v.                                            )
                                                   )
13   TROY X. KELLEY, DIANE D. KELLEY,             )    SUMMONS (20/60 DAYS)
     and the marital community comprised thereof,  )
14   UNITED NATIONAL, LLC, and                     )
     BLACKSTONE INTERNATIONAL, INC.,              )
15                                                 )
     Defendants.                                   )
16   _____       )

17

18   TO THE DEFENDANTS, TROY X. KELLEY, DIANE D. KELLEY, and the marital

19   community comprised thereof, UNITED NATIONAL, LLC, and BLACKSTONE

20   INTERNATIONAL, INC.:

21        A lawsuit has been started against you in the above entitled court by RICHARD L. POPE,

22   JR., Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon

23   you with this Summons.

24        In order to defend against this lawsuit, you must respond to the complaint by stating your

25   defense in writing, and serve a copy upon the person signing this summons within 20 days after

26   the service of this summons, excluding the day of service, or a default judgment may be entered

27   against you without notice.  A default judgment is one where plaintiff is entitled to what he asks

28

**SUMMONS (20/60 DAYS) – 1**

**Lake Hills Legal Services P.C.**
**15600 N.E. 8th Street, # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1   for because you have not responded. If you serve a notice of appearance on the undersigned

2   person you are entitled to notice before a default judgment may be entered.

3       You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4   demand must be in writing and must be served upon the person signing this summons. Within 14

5   days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service

6   on you of this summons and complaint will be void.

7       If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8   that your written response, if any, may be served on time.

9       This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State

10  of Washington.

11

12

13  Dated: September 8, 2015          Signed:    /s/ Richard L. Pope, Jr.
                                                 RICHARD L. POPE, JR.
14                                               WSBA # 21118
                                                 Attorney for Plaintiff
15
                                                 Lake Hills Legal Services P.C.
16                                               15600 N.E. 8th Street, Suite B1-358
                                                 Bellevue, Washington  98008
17                                               Tel: (425) 829-5305
                                                 Fax: (425) 526-5714
18                                               E-Mail:  rp98007@gmail.com

19                                               SERVE A COPY OF YOUR ANSWER
                                                 ON PLAINTIFF'S ATTORNEY:
20
                                                 RICHARD L. POPE, JR.
21                                               Lake Hills Legal Services P.C.
                                                 15600 N.E. 8th Street, Suite B1-358
22                                               Bellevue, Washington  98008
                                                 Tel: (425) 829-5305
23                                               Fax: (425) 526-5714
                                                 E-Mail:  rp98007@gmail.com
24

25

26

27

28
    **SUMMONS (20/60 DAYS) – 2**